**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.12-CV-1384-LTB

**LISA WATERS**, an individual,

    Plaintiff,

v.

**AXL CHARTER SCHOOL**, a Colorado non-profit public charter school,

    Defendant.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

---

    Plaintiff Lisa Waters ("Ms. Waters"), through her undersigned counsel, submits this Response in Opposition to Defendant AXL Charter School's ("AXL") Motion to Dismiss and for Summary Judgment ("Motion").  Ms. Waters opposes the Motion on the following grounds.

## **INTRODUCTION**

    AXL discriminated against Ms. Waters based upon her sex, pregnancy, child birth, decision to take maternity leave, and her desire to express breast milk while at work. Unfortunately, this is not the only time AXL has discriminated against a pregnant teacher.  As a result, Ms. Waters initiated this lawsuit in order to recover the damages AXL's illegal conduct has caused.

    This case is in its nascent stage – AXL has not even answered Ms. Waters' complaint yet. Instead, AXL seeks dismissal of Ms. Waters' complaint based upon a wide-array of grounds, which lack explanation and/or legal support.

As discussed in greater detail below, Ms. Waters presents a genuine material of fact that she suffered an adverse employment action when AXL decided to not renew her employment for the 2011-2012 school year. Ms. Waters also adequately pled that the circumstances surrounding AXL's decision gives rise to at least an inference of discrimination by AXL. Due to its own conduct, moreover, AXL is now equitably estopped from contesting that Ms. Waters is an eligible employee under the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA"). At the very least, furthermore, there is a genuine issue of material fact that AXL interfered with Ms. Waters' FMLA leave and failed to adhere to the requirements of the Workplace Accommodations for Nursing Mothers Act, Colo. Rev. Stat., § 8-13.5-102, *et seq.* ("WANMA"). Finally, Ms. Waters adequately pled a claim for wrongful discharge in violation of public policy under Colorado. For these reasons, the Court should deny AXL's Motion.

## STANDARDS OF REVIEW

AXL's Motion purports to seek dismissal of Ms. Waters' claims under Fed. R. Civ. P. 12(b)(1) and 56. AXL does not address, however, the appropriate standards of review presented by its Motion.

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be presented in two different forms. Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). First, the movant may assert that the allegations of the complaint fail to adequately plead subject matter jurisdiction. Id. In reviewing such a motion, the Court must accept the allegations in the complaint as true. Id. Second, as AXL attempts to do here, the movant may go beyond the allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. Id. In reviewing this form of motion to dismiss for

lack of subject matter jurisdiction, the Court may allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. Id. "In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." Id. However, the Court is required to convert the motion to a Fed. R. Civ. Pro. 56 summary judgment motion "when resolution of the jurisdictional question is intertwined with the merits of the case." Id.

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate only where the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The movant must establish the factual basis for its motion and identify the admissible evidence, if any, which demonstrates that there are no genuine issues as to any material facts and that it is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmovant bears the burden of showing that there are issues of material fact. Celotex, 477 U.S. at 322. The nonmovant may satisfy this burden by showing specific facts "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the

non-moving party." Pepsi–Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc., 431 F.3d 1241, 1256 (10th Cir. 2005).

Finally, although styled as a mixed Rule 12(b)(1) and Rule 56 Motion, AXL additionally asserts that Ms. Waters has allegedly failed to adequately plead certain elements of particular claims. [See, e.g., Motion at ¶¶ 11, 12, 16.] Such arguments are construed pursuant to Fed. R. Civ. P. 12(b)(6).

There is a strong presumption against dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). See Cottrell, Ltd. v. Biotrol Int'l, Inc., 191 F.3d 1248, 1251 (10th Cir. 1999). Pursuant to Fed. R. Civ. P. 8(a)(2), a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Dismissal for failing to meet this standard is inappropriate where the plaintiff has provided fair notice of her claims. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1952 (2009). To provide fair notice, the plaintiff need only allege a claim "that is plausible on its face." See Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011). "Plausibility" means that the plaintiff has pled facts which allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 129 S.Ct. at 1950. In making its Rule 12(b)(6) assessment, the Court must accept as true all well-pleaded allegations and construe these allegations in the light most favorable to the Plaintiff. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Furthermore, the Court may only look to the allegations in the Complaint and any documents attached thereto. See Casanova v. Ulibarri, 595 F.3d 1120, 1125 (10th Cir. 2010); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009).

**ARGUMENT**

I. **MS. WATERS RAISES A GENUINE ISSUE OF MATERIAL FACT REGARDING AND PROPERLY ALLEGES HER SEX DISCRIMINATION CLAIMS UNDER TITLE VII AND CADA AGAINST AXL**

Ms. Waters' first two claims against AXL are for sex discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII") and the Colorado Anti-Discrimination Act, Colo. Rev. Stat., § 24-34-402 ("CADA"). [Complaint at ¶¶ 49-69.] The familiar McDonnell–Douglas burden-shifting test applies to both claims. See Garrett v. Hewlett–Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002). Under McDonnell-Douglas, after Ms. Waters establishes a *prima facie* case of employment discrimination, the burden shifts to AXL to provide a legitimate, non-discriminatory basis for its adverse employment decision. Id. If AXL is able to do so, then the burden shifts back to Ms. Waters to offer evidence to show her sex, pregnancy, having given birth, or a medical condition related to her pregnancy or childbirth, was the determinative factor behind AXL's decision or that AXL's alleged non-discriminatory reason was merely pretext. Id.

To establish a *prima facie* case of discrimination, Ms. Waters must present evidence that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Luster v. Vilsack, 667 F.3d 1089, 1095 (10th Cir. 2011). Ms. Waters' burden to meet her *prima facie* case is "slight" and "not onerous." Orr v. City of Albuquerque, 417 F.3d 1144, 1149 (10th Cir. 2005) (internal quotations and citation omitted). Indeed, at the *prima facie* stage, Ms. Waters only needs to "raise an *inference of discrimination* . . . ." Id. (internal quotations and citation omitted).

5

AXL challenges Ms. Waters' ability to meet her *prima facie* burden.  AXL seeks dismissal of Ms. Waters' sex discrimination claims (First (Title VII) and Second (CADA) Claims for Relief) on two separate grounds:  (1) Ms. Waters did not suffer an adverse employment action; and (2) Ms. Waters failed to allege that she was treated less favorably than similarly situated employees.  [Motion at ¶¶ 8, 11.]  Although unclear, it appears that AXL seeks dismissal of the claims on the first ground under Fed. R. Civ. Pro. 56, while it seeks dismissal of the claims under the second ground pursuant to Fed. R. Civ. 12(b)(6).  [See Motion at ¶¶ 8, 11.]  For the following reasons, the Court should deny AXL's Motion and allow Ms. Waters to pursue her sex discrimination claims against AXL and obtain discovery on such claim at a minimum.

### A.  Ms. Waters Suffered An Adverse Employment Action

An adverse employment action constitutes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1222 (10th Cir. 2006).  Actions that carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" also may constitute an adverse employment action.  Annett v. Univ. of Kan., 371 F.3d 1233, 1239 (10th Cir. 2004).

AXL claims that Ms. Waters did not suffer an adverse employment action.  [Motion at ¶ 8.]  According to AXL, it never choose not to "renew" Ms. Waters, but rather it attempted to

reassign Ms. Waters to teach the 3rd grade boys class and Ms. Waters allegedly refused.[1] [Motion at ¶ 8 and Exhibit A at ¶5.]

Ms. Waters vehemently denies AXL's description of the April 2011 meeting between Ms. Waters and Ms. Audra Philippon.  Contrary to her self-serving affidavit, Ms. Philippon specifically informed Ms. Waters during that meeting that she "was not a good fit" with AXL and had "let [her] class down," as evidenced by her students' allegedly low aptitude test scores. [Exhibit A at ¶ 15.]  Ms. Philippon further stated that AXL would not "renew" Ms. Waters for the 2011-2012 school year.  [Exhibit A at ¶ 15.]  She also told Ms. Waters that she would be allowed to finish the school year with her class because Ms. Waters' class had had "enough disruptions" – an implicit reference to Ms. Waters having taken maternity leave.  [Exhibit A at ¶ 15.]  Ms. Philippon further offered to assist Ms. Waters to find another job.  [Exhibit A at ¶ 15.] By not being renewed AXL had effectively terminated Mr. Waters' employment, effective at the end of the school year.  [Exhibit A at ¶ 15.]

When the meeting ended, Ms. Philippon commented that 3rd grade boys position was open and she "may consider" placing Ms. Waters there.  [Exhibit A at ¶ 15.]   In response, Ms. Waters stated that she would give "100%" to such an opportunity.  [Exhibit A at ¶ 15.]   Despite

---

[1] AXL repeatedly confuses Ms. Waters' allegations regarding AXL's discriminatory treatment of her as allegations of adverse employment action.  [Motion at ¶¶ 10, 12.]  The numerous instances where AXL mistreated Ms. Waters support the inference that AXL did not renew Ms. Waters because of her sex, her pregnancy, the birth of her child, and medical conditions related to her pregnancy and childbirth.  [Complaint at ¶¶ 22-45.]

7

Ms. Philippon's comment, however, AXL never spoke to Ms. Waters regarding the 3rd grade boys' class again and never offered her that position.[2]  [Exhibit A at ¶ 15.]

Thus, there is a genuine question of material fact regarding whether Ms. Waters suffered an employment action and the Court should deny AXL's Motion for summary judgment on Ms. Waters' First and Second Claims for Relief.[3]

### B.    Ms. Waters Adequately Pled that AXL's Decision to Not Renew Her Occurred Under Circumstances Giving Rise to an Inference of Discrimination

As discussed above, Ms. Waters must assert that her non-renewal occurred under circumstances giving rise to an inference of discrimination in order to meet the third prong of her *prima facie* case.  See Luster, 667 F.3d at 1095.  Ms. Waters may satisfy the third prong by alleging that AXL treated similarly situated employees more favorably or that a non-pregnant employee took her position.  Id.; Been v. New Mexico Dep't of Info. Tech., 815 F. Supp. 2d 1222, 1235 (D.N.M. 2011) (citing Atchley v. Nordam Group, Inc., 180 F.3d 1143, 1148 (10th Cir. 1999)).

---

[2] Even had AXL had offered Ms. Waters the 3rd grade boys class, it still would have constituted an adverse employment action.  While teaching the 1st and 2nd grade girls, Ms. Waters was a "lead" teacher and "looped" with her class (i.e., taught the same girls in 1st and 2nd grade). [Exhibit A at ¶ 4.]   She is licensed to teach only pre-kindergarten through the 3rd grade.  [Exhibit A at ¶ 3.]   If she was reassigned to the 3rd grade, she would not have looped with her students to the fourth grade.  [Exhibit A at ¶ 16.]   Thus, she would have lost her status as a "lead" teacher.  [Exhibit A at ¶ 16.]   Furthermore, her reassignment from her 1st/2nd grade girls loop to a non-looping position would have caused her great humiliation and involved a completely new curriculum and teaching style due to the change in grades and the sex of the students.  [Exhibit A at ¶ 16.]

[3] For the same reasons, the Court should deny AXL's request to dismiss Ms. Waters' Fourth (FMLA Retaliation) and Sixth (Wrongful Discharge in Violation of Public Policy) Claims for Relief which are based on the same contention that Ms. Waters did not suffer an adverse employment action.  [Motion at ¶ 8.]

AXL incorrectly claims that Ms. Waters does not adequately plead that she was treated less favorably than similarly situated employees. [See Motion at ¶¶ 11-13.] Ms. Waters construes this argument as a motion pursuant to Fed. R. Civ. P. 12(b)(6).

As an initial matter, AXL incorrectly presumes that alleging less favorable treatment is the sole manner by which Ms. Waters may satisfy her burden on the third prong of her *prima facie* discrimination case. Ms. Waters may allege circumstances surrounding AXL's decision to not renew her give rise to an inference of discrimination. See Luster, 667 F.3d at 1095. As pled in detail throughout her complaint (further bolstered by Ms. Philippon's comments during their April 2011 meeting), Ms. Waters' allegations raise an inference that AXL chose not to renew Ms. Waters based upon her sex, her pregnancy, the birth of her child, and medical conditions related to her pregnancy and childbirth. [Complaint at ¶¶ 22-45; 55; Exhibit A at ¶¶ 19-20.[4]]

Nonetheless, Ms. Waters does specifically allege that she was treated less favorably than other non-pregnant employees: "AXL treated other employees more favorably. For example, AXL renewed one of Ms. Waters' fellow teachers for the 2011-2012 school year although the teacher's students received virtually identical aptitude test scores to Ms. Waters' students." [Complaint at ¶ 57.] AXL wholly fails to address this allegation.[5]

---

[4] To the extent the Court finds that Ms. Waters has not adequately pled these allegations, Ms. Waters requests leave to amend.

[5] In conclusory and self-serving fashion, Ms. Philippon states in her affidavit that "Ms. Waters was at no time treated less favorably than non-pregnant employees, employees who had not taken Family and Medical leave, or non-nursing employees, with similar needs." [Exhibit A to Motion at ¶ 7.] See FrontRange Solutions USA, Inc. v. Newroad Software, 505 F. Supp. 2d 821, 829-30 (D. Colo. 2007) (stating affidavits with factually unsupported conclusions and self-serving assertions not corroborated by reference to any record evidence or contradicted by the other evidence are inadmissible). In the event the Court treats AXL's argument that Ms. Waters did not adequately plead that she was treated less favorably than similarly situated employees

9

Accordingly, Ms. Waters has adequately pled the elements of her *prima facie* claim for discrimination and the Court should deny AXL's request to dismiss Ms. Waters' First and Second Claims for Relief.

## II. MS. WATERS RAISES A GENUINE ISSUE OF MATERIAL FACT REGARDING HER FMLA INTERFERENCE AND RETALIATION CLAIMS

Ms. Waters' Third and Fourth Claims for Relief against AXL are for interference and retaliation, respectively, in violation of the FMLA.  The FMLA mandates that "covered employers" provide "eligible employees" with up to twelve weeks of unpaid, job-protected medical leave per year for, among other things, the birth and care of a child.  See 29 U.S.C. § 2612(a)(1)(A).  The FMLA makes it illegal for a covered employer "to interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided in this subchapter."  29 U.S.C. § 2615(a)(1).  The FMLA further prohibits employers from discharging or discriminating against an employee who opposes any practice made unlawful by the FMLA.  29 U.S.C. § 2615(a)(2); see Doebele v. Sprint/United Management Co., 342 F.3d 1117, 1135 (10th Cir. 2003) (construing FMLA to prohibit retaliation against employee for exercising FMLA rights).

### A. AXL is Equitably Stopped from Denying that Ms. Waters is an "Eligible Employee" Under the FMLA

While readily admitting that it offers "Family and Medical Leave" to its employees, AXL claims that because it allegedly has less than fifty employees that the Court should dismiss Ms.

---

under C.R.C.P. 56, Ms. Waters provides evidence regarding specific employees who were treated much better (i.e., renewed) then she was and that she was replaced by a non-pregnant employee.  [Exhibit A at ¶ 20.]  Thus, there is a genuine issue of material fact and the Court should deny AXL's Motion.

Waters' FMLA claims for lack of subject matter jurisdiction.[6]  [Motion at ¶ 7; Motion, Exhibit A, at ¶ 3.]  Regardless whether AXL had fifty employees when Ms. Waters asked for maternity leave, AXL is equitably stopped from contesting Ms. Waters' eligibility for FMLA protection due to its own admissions and promises.  Therefore, the Court should deny AXL's Motion to dismiss Ms. Waters' Third and Fourth Claims for Relief.

The Tenth Circuit has not decided whether equitable estoppel applies in FMLA actions. However, it has recognized that a myriad of other Circuits have adopted its application.  See Banks v. Armed Forces Bank, 126 Fed. Appx., 2005 WL 699295, at *1 (10th Cir., Mar. 28, 2005) (unpublished) (citing decisions).  Under the circumstances of this case, AXL should be equitably stopped from contesting Ms. Waters' eligibility for protection under the FMLA.  See Dobrowski v. Jay Dee Contractors, Inc., 571 F.3d 551, 554-58 (6th Cir. 2009) (holding that in order for equitable estoppel to apply in FMLA action, plaintiff need only show: "(1) a definite misrepresentation as to a material fact, (2) a reasonable reliance on the misrepresentation, and (3) a resulting detriment to the party reasonably relying on the misrepresentation").

AXL readily admits that it offers "Family and Medical Leave" to its employees and "uses the federal Family and Medical Leave Act as a guideline for such leave." [Motion, Exhibit A, at ¶ 3.]  Through its Handbook, furthermore, AXL makes the following promise:

> **Family Leave**
> Any employee of [AXL], who is employed at the start of an academic year, may take up to a total of 12 weeks of unpaid Family and Medical leave during the academic year….
>
> Family and Medical leave may be used for one or more of the following reasons:  (1) the birth and care of an employee's child....

---

[6] AXL's argument is brought pursuant to Fed. R. Civ. P. 12(b)(1) and 56.

[Motion, Exhibit A at Exhibit 1 (emphasis supplied).]

At the beginning of the 2010-2011 school year, AXL held a meeting with its teachers to discuss the Handbook and its FMLA leave policy. [Exhibit A at ¶ 6.] When Ms. Waters became pregnant, she asked Ms. Philippon about pregnancy leave. [Exhibit A at ¶ 9.] Ms. Philippon told her that "it would not be a problem." [Exhibit A at ¶ 9.] As her pregnancy leave approached, Ms. Waters spoke with Ms. Philippon and Ms. Tammi Avila on several occasions regarding the timing and length of her leave, as well as the accommodations she would need upon her return from leave. [Exhibit A at ¶ 9.] AXL never informed Ms. Waters that AXL was not subject to the FMLA or that she was not entitled to FMLA leave. [Exhibit A at ¶ 11.]

Based upon AXL's representations in the Handbook and at the informational meeting in July 2010, in addition to AXL granting her request to take maternity leave, Ms. Waters believed that she had the right to take maternity leave and that AXL could not deny her renewal as a result of doing so. [Exhibit A at ¶ 12.] If she had known that her job may be in jeopardy for taking the extended maternity leave (called FMLA leave by AXL) to care for her newborn child, Ms. Waters would have taken a shorter leave. [Exhibit A at ¶ 12.] Finally, Ms. Waters believes that she was not renewed, at least in part, because she took maternity leave. [Exhibit A at ¶ 19.]

As the above confirms, AXL affirmatively represented and never recanted that Ms. Waters was entitled to take FMLA protected maternity leave. See Dormeyer v. Comerica Bank-Illinois, 223 F.3d 579, 582 (7th Cir. 2000) ("[A]n employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be stopped to plead the defense of ineligibility to the employee's claim of entitlement to family leave."). Relying upon these representations, Ms.

Waters requested and took maternity leave.  See Tate v. Farmland Industries, Inc., 268 F.3d 989, (10th Cir. 2001) ("The FMLA . . . does not require a covered employee to specifically ask for FMLA benefits. An employee need not expressly assert rights under the FMLA or even mention the FMLA. If the employer is on notice that the employee might qualify for FMLA benefits, the employer has a duty to notify the employee that FMLA coverage may apply.") (internal citations omitted).  Finally, Ms. Waters relied to her detriment upon these representations when she was not renewed, in part, for taking FMLA protected maternity leave.

As a result, Ms. Waters has raised a genuine issue of material fact regarding the applicability of equitable estoppel to AXL's argument that she is ineligible for FMLA protection. See Dobrowski, 571 F.3d at 554-58.  Therefore, the Court should deny AXL's Motion to dismiss Ms. Waters' Third and Fourth Claims for Relief.

### B. Ms. Waters is Entitled to Discovery on the Number of Employees AXL Employed at the Time of Her Request for FMLA Maternity Leave

Whether or not the Court applies equitable estoppel to Ms. Waters' FMLA claims, however, Ms. Waters should at the very least be afforded an opportunity to conduct discovery regarding her eligibility to FMLA benefits.  Pursuant to Fed. R. Civ. P. 56(d), where a nonmovant to a motion for summary judgment cannot present facts essential to oppose the motion, the court may, among other things, deny the motion or allow discovery.  See also Holt, 46 F.3d at 1003 (stating that under Fed. R. Civ. P. 12(b)(1), the court may allow a limited evidentiary hearing to resolve disputed jurisdictional facts).

Here, despite offering FMLA leave, AXL now asserts that Ms. Waters was an ineligible employee under the FMLA at the time she made the request for maternity leave in July 2010. See 29 C.F.R. § 825.110(e) (stating that "[w]hether 50 employees are employed within 75 miles

to ascertain an employee's eligibility for FMLA benefits is determined when the employee gives note of the need for leave"). The facts concerning how many employees AXL employed in July 2010, is solely and particularly within the control of AXL. [Exhibit A at ¶ 7.] Such facts include, but are not limited to, AXL's corporate structure, corporate affiliations, and payroll records.

Subject matter jurisdiction in this matter is not a concern as a result of Ms. Waters' viable Title VII claim discussed above. Further, this matter is in its nascent stages. Therefore, Ms. Waters should be allowed to seek discovery on the issue of the number of employees AXL employed in July 2010 and the Court should deny AXL's request to prematurely dismiss Ms. Waters' FMLA claims.

### C. There is a Genuine Issue of Material Fact Regarding Whether AXL Interfered with Ms. Waters' FMLA Rights

"To make out a *prima facie* claim for FMLA interference, a plaintiff must establish (1) that [s]he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [her] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of [her] FMLA rights." Jones v. Denver Public Schs., 427 F.3d 1315, 1319 (10th Cir. 2005).

AXL baselessly contends that Ms. Waters cannot satisfy the third prong. [Motion at ¶ 9.] Specifically, through the submission of a handful emails, AXL asserts that the Court should enter summary judgment on Ms. Waters' FMLA interference claim because she allegedly "solicited" contact from AXL. [Motion at ¶ 9.] AXL's contention lacks merit.

From the time Ms. Waters became pregnant, she feared for her job due to numerous comments made by Ms. Philippon and others at AXL regarding pregnant teachers. [Exhibit A at

14

¶ 5.]  In fact, AXL routinely told its teachers that when they took time off that they were taking other people away from their jobs and placing a significant burden on AXL.  [Exhibit A at ¶ 5.]  As Ms. Waters' leave approached, Ms. Philippon repeated similar comments.  [Exhibit A at ¶ 10.]

While Ms. Waters was on leave, she felt obligated to offer assistance in order to safeguard her employment with AXL.  [Exhibit A at ¶ 13.]  In fact, when AXL decided not to sponsor Ms. Waters' substitute's visa application, the substitute put in less effort.  [Exhibit A at ¶ 14.]  As a result, Ms. Waters felt even more obligated to offer as much assistance as possible to ensure that her students (and their test scores) did not suffer to ensure she kept her job.  [Exhibit A at ¶¶ 13-14.]  By placing added pressure on Ms. Water, AXL interfered with Ms. Waters' right not to work while on FMLA leave.  [Exhibit A at ¶¶ 13-14.]

Ms. Waters raises a genuine issue of material fact regarding her FMLA interference claim.  Therefore, the Court should deny AXL's Motion for summary judgment as to Ms. Waters' Third Claim for Relief.

### III.  MS. WATERS RAISES A GENUINE ISSUE OF MATERIAL FACT REGARDING HER WANMA CLAIM

Ms. Waters' Fifth Claim for Relief is for violations of WANMA.  WANMA provides in relevant part that an "employer shall provide reasonable unpaid break time or permit an employee to use paid break time, meal time, or both, each day to allow the employee to express breast milk for her nursing child for up to two years after the child's birth."  Colo. Rev. Stat., § 8-13.5-104(1).

AXL seeks dismissal of Ms. Waters' WANMA Claim on two grounds:  (1) because Ms. Waters did not allegedly adhere to WANMA's non-binding mediation provision; and (2) that its

efforts to accommodate Ms. Waters' breast-feeding activities "were made in good faith and substantially effective." [Motion at ¶¶ 16-17.] Again, AXL's assertions fail.

Pursuant to WANMA, "[b]efore an employee may seek litigation for a violation of this section, there shall be nonbinding mediation between the employer and the employee." C.R.S., § 8-13.5-104(4). As an initial matter, because AXL chose not to renew Ms. Waters she is no longer an "employee." Therefore, the mediation provision is inapplicable. Furthermore, after Ms. Waters filed her charge of discrimination with the Colorado Civil Rights Division, AXL was provided with an opportunity to mediate. [Exhibit A at ¶ 21.] AXL refused. [Exhibit A at ¶ 21.] Thus, any further efforts would be a futile gesture – a gesture the law does not require. See Rice v. Kansas, 2011 WL 2078752, at *4-*5 (D. Kan., May 26, 2011) (unpublished) (stating that the law does not require a futile gesture in the context of exhausting administrative remedies under Title VII). Finally, to the extent necessary, Ms. Waters would be willing to enter into non-binding mediation with AXL.

AXL further asserts that its conduct satisfied WANMA. Ms. Water again denies AXL's self-serving description of the events. [Exhibit A at ¶¶ 17-18.] In particular, on numerous occasions, AXL failed to relieve Ms. Waters during the lunch hour so that she could express breast milk. [Exhibit A at ¶ 17.] AXL's failure caused Ms. Waters not only great pain, but also great embarrassment due to her tops becoming wet from not being able to express breast milk. [Exhibit A at ¶ 18.] AXL's failure to provide the necessary accommodations to Ms. Waters ultimately resulted in her milk production to recede. [Exhibit A at ¶ 18.]

As a result, there is genuine issue of material fact regarding Ms. Waters' WANMA claim and the Court should deny AXL's Motion.

### IV. MS. WATERS PROPERLY ALLEGES A CLAIM FOR WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

Ms. Waters' Sixth Claim for Relief against AXL is a state law claim for wrongful discharge in violation of public policy. To state a *prima facie* case for such a claim, Ms. Waters must allege that:

> (1) the employer . . . prohibited the employee from . . . exercising an important job-related right or privilege; (2) the action directed by the employer would . . . undermine a clearly expressed public policy relating to . . . the employee's right or privilege as a worker; (3) the employee was terminated as the result of refusing to perform the act directed by the employer; and (4) the employer was aware, or reasonably should have been aware, that the employee's refusal to comply with the employer's order or directive was based on the employee's reasonable belief that the action ordered by the employer was . . . violative of the employee's legal right or privilege as a worker.

Bonidy v. Vail Valley Ctr. for Aesthetic Dentistry, P.C., 186 P.3d 80, 83 (Colo. App. 2008) (internal quotations omitted). Such a claim is well established under Colorado law.

In its Motion, AXL does not contest that Ms. Waters has properly pled this claim. Rather, AXL contends that Ms. Waters' Sixth Claim for Relief should be dismissed because it is based upon four separate statutes that provide a private cause of action. [Motion at ¶ 19.]

Ms. Waters' Sixth Claim for relief is based upon the federal and state legislature's clear mandate to protect the employment of pregnant and breast-feeding mothers, as evidenced by Title VII, CADA, FMLA, and WANMA. As a result, Ms. Waters' assertion of this claim is appropriate. In any event, Ms. Waters has pled her Sixth Claim for Relief in the alternative. To the extent the Court finds that any of her statutory claims are unavailable to her, she would seek recovery pursuant to this common law theory. Therefore, the Court should deny AXL's Motion to dismiss Ms. Waters' Sixth Claim for Relief at this early stage.

## CONCLUSION

For the reasons discussed herein, Plaintiff Lisa Waters respectfully requests the Court deny AXL's Motion to Dismiss and for Summary Judgment and allow Ms. Waters' claims to proceed as appropriately alleged.

Dated: August 22, 2012

By: /s/ Leah P. VanLandschoot
Leah P. VanLandschoot, #35723
The Litigation Boutique LLC
1720 S. Bellaire Street, Suite 805
Denver, Colorado 80222
T: 303.355.1942
F: 303.355.2199
lvanlandschoot@thelitbot.com

*ATTORNEY FOR*
*PLAINTIFF LISA WATERS*

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2012, a copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

William P. Bethke, Esq.
**KUTZ & BETHKE LLC**
363 S. Harlan Street, Suite 104
Lakewood, CO 80226
wpbethke@lawkb.com

/s/ *Jacquie Darby*
Jacquie Darby