## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 12-CV-1384

**LISA WATERS,** an individual,

      Plaintiff,

v.

**AXL ACADEMY CHARTER SCHOOL**, a Colorado non-profit public charter school,

      Defendant.

---

### REPLY IN SUPPORT OF DISMISSAL AND SUMMARY JUDGMENT

---

### I.  AXL At No Time Refused Mediation — Nor Would it Have Been Futile

Plaintiff misleads the Court in asserting that AXL "refused" to mediate.[1]  At no time has AXL received a communication from Plaintiff or an administrative agency asking it to mediate.[2] Plaintiff appears to be referring to a standard form that permits *either* party to a Colorado civil rights charge to *ask* for mediation.  Neither party took this initiative.  Instead, Plaintiff insisted on an early right-to-sue letter.  Plaintiff now wants to ignore her failure to seek mediation because AXL did not make an affirmative effort to seek mediation (and mislabels this "refusal").

This also misses the sting of the statute.  It states: "[b]efore *an employee* may seek litigation ... there shall be nonbinding mediation ...."[3]  AXL did not initiate litigation and is not

---

[1]  Plaintiff's Response in Opposition, at 16.

[2]  Affidavit of Audra Philippon (attached, hereinafter "Philippon Affidavit, ¶ _, at _"), ¶ 8, at 3.

[3]  C.R.S. § 8-13.5-104(5) (emphasis ours).

the employee.  The burden of at least asking for mediation is on the party required by statute to satisfy this precondition to litigation: the employee.

Last, the representation that mediation would have been futile is baseless.  The third grade job Plaintiff now represents she would have taken remained open in April, May, June, and July of 2011.  This was also the period in which mediation would have been most effective in resolving any problems Ms. Waters faced due to breast feeding at School.  And this was a period in which Ms. Waters *admits* that she understood AXL's administration was open to considering her for the third grade job.[4]  There would have been nothing even remotely "futile" about following up on her admitted understanding, by mediation or otherwise.  Further, the person finally hired to fill this position was a sufficiently poor teacher to be released in mid-school year — in December.[5]  Mediation at any time up to the next December would have given Ms. Waters a simple prospect of securing a full time teaching job — an outcome far from "futile" — unless Ms. Waters never intended to teach third grade boys.

The breast-feeding claim must be dismissed for failure to seek required mediation.

## II.  Discovery Will Not Change the Number of Employees at AXL

AXL is a public charter school.  Under Colorado's Financial Transparency Act, its annual budgets and financial audits are available to the world, online, at no charge.[6]  Information about

---

[4]  Affidavit of Lisa Waters ¶ 15 (attached to Plaintiff's Response in Opposition).

[5]  Philippon Affidavit, ¶ 7, at 3.

[6]  C.R.S. §§ 22-44-301 – 304.

AXL is also available through the Colorado Open Records Act,[7] upon request, at a nominal charge, and with a presumptive three-day response time.  Use of these simple tools would have revealed that AXL did not reach the 50-employee threshold required for Family and Medical Leave Act,[8] (FMLA) coverage.  Attached to this reply are payroll records and the affidavit of Bart Skidmore, the contract Chief Financial Officer for AXL affirming what was already represented by the Head of School and is readily discernable for anyone genuinely interested — AXL has *never* had 50 employees.[9]  Mr. Skidmore's affidavit also confirms that AXL has but one corporate affiliation — a non-profit supporting corporation that holds tile and debt for its facility, and which has never had *any* employees.[10]  All employees of AXL *and* in any way affiliated with AXL have never numbered close to fifty.  AXL has never been subject to FMLA.  Discovery is not needed to establish this bright-line fact.  The FMLA claims must be dismissed.

### III.  Plaintiff's Estoppel Argument is Frivolous

Plaintiff nowhere asserts that any person at AXL or any publication of AXL ever represented that the Family and Medical Leave *Act* applied to AXL employees.  As with cases cited by Plaintiff, the facts here are simply insufficient to make out an estoppel.[11]  That AXL

---

[7]  C.R.S. §§ 24-72-202, *et seq.*

[8]  29 U.S.C. §§ 2601-2654.

[9]  Affidavit of Bart Skidmore, (attached)  ¶¶ 3-4 at 1 & exhibits 1 & 2.

[10]  *Id*  ¶¶ 5-6, at 1-2.

[11]  See, e.g., *Dobrowski v. Jay Dee Contractors*, 571 F.3d 551 (6th Cir. 2009) (facts do not support use of estoppel to apply the FMLA); *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579 (7th Cir. 2000) (same).  In this case, of course, AXL never represented that FMLA had anything to do with Ms. Waters' employment — the very first element of an estoppel is entirely missing.

gives employees Family and Medical Leave under a brief policy statement that neither mentions the FMLA nor parrots the full statute cannot constitute a representation that FMLA applies. Further, AXL's FML policy is part of an employee handbook that begins with a "disclaimer" permitting AXL to change that policy at any time *and* to not follow it in any particular case.[12] Thus, Plaintiff is asserting that a revocable policy that never stated it reflected federal law, and *no* evidence that any AXL representative ever said the law applied, allows her to "estop" AXL — from what?  AXL has never before spoken to FMLA.  In taking a position here AXL is not properly "estopped" by anything. To assert otherwise is frivolous.

### IV.  Plaintiff's Attempt to Resuscitate Her "Interference" Claim is Frivolous

Plaintiff does not deny that on multiple occasions she took the initiative to ask both co-workers and supervisors, in writing, to give her work while she was at home, caring for an infant, bored.  There is no reason her substitute teacher or fellow teachers or supervisor should not have taken Plaintiff at her word.  Simply, Plaintiff *repeatedly* invited professional interaction from multiple individuals at AXL during her leave.  She cannot now complain that her invitation was accepted.  The claim of FMLA interference is frivolous.

### V.  Assignment to the Third-Grade-Boys Class Would Not Have Been a Demotion

We address below the proper framework for analysis of the pregnancy discrimination claim.  Lurking in the shadows of that claim, however, is Ms. Waters' insistence that assignment to the third grade classroom would have been a demotion.  We note that this subjective mis-

---

[12]  <u>Philippon Affidavit</u>, ¶ 4 at 1 & exhibit 2.

perception no doubt explains why Ms. Waters refused that assignment.  Though she now represents she would have happily taken a "demotion," it is important to understand that the "demotion" characterization is baseless, as a matter of demonstrable and indisputable fact.

In trying to make the third grade assignment seem anomalous, Waters has variously suggested that: (1) AXL assigns women to teach girls and men to teach boys;[13] (2) AXL always assigns teachers to "loop" (that is follow a class of students for two years) and never changes assignment by more than one grade;[14] (3) third-grade would be materially different, either because of Ms. Waters' license or because it is "tested";[15]  and (4) Ms. Waters' stellar performance as a teacher contra-indicated any change of assignment.[16]  Some combination of these is thought to indicate a "demotion."  But all four points are pure invention.  There is no basis for claiming a "demotion" through this proposed or suggested assignment.

**A.  Teachers at AXL are routinely assigned cross-gender.**  AXL uses single-gender classrooms in an effort to reduce peer or social pressures among students that impact academic performance, and as part of an overall strategy of breaking down, not building up, gender stereotypes.[17]  Consistent with this philosophy, AXL pursues an affirmative strategy of frequently assigning teachers across genders — though hiring enough male elementary school teachers is

---

[13]  See, e.g., Complaint ¶¶ 12, 15; Affidavit of Lisa Waters, ¶ 16.

[14]  Affidavit of Lisa Waters, ¶ 16.

[15]  Philippon Affidavit, ¶ 6 at 2.

[16]  See, e.g., Complaint ¶ 17.

[17]  Philippon Affidavit, ¶ 2 at 1.

challenging.  From 2008-09 to 2012-13, AXL assigned 14 male teachers to girls' classrooms and 22 female teachers to boys' classrooms.[18]  Thirty-six assignments is not an exception, it is a preference and does not represent even a hint of "demotion."

    **B.  AXL routinely assigns teachers without "looping"**  AXL frequently uses "looping" — and frequently does not.  Since 2009-10 (the first year in which anyone could loop), AXL has not "looped" a teacher 16 times.[19]  In ten cases, teacher assignment changed by more than one grade.[20]  In some cases this was a decision not to repeat an unsuccessful match of teacher and students.  In other cases it reflected teacher strengths that could be matched to the needs of particular classes.  That is, assignment outside looping can "connote positive things about a teacher" and "in no case has such an assignment been used, treated, or regarded as a demotion."[21]  The 16 cases in which this has happened to date, ten involving a change of two or more grade levels, confirm that assignment outside "looping" is not a "demotion" at AXL.

    **C.  Third grade is primary school.**  Ms. Waters admits her license encompasses third grade.[22]  This is consistent with the common understanding of what constitutes "primary school."  There is no flavor of demotion in being assigned to a grade for which one is expressly licensed.

    **D.  All grades at AXL are "tested."**  Ms. Waters expressed in various contexts that she

---

[18]  *Id* & at exhibit 1.

[19]  Philippon Affidavit, ¶ 3 at 1.

[20]  *Id*.

[21]  *Id*.

[22]  Affidavit of Lisa Waters ¶ 3 at 1.

would never teach a "tested" grade.  Third grade is the year in which students began taking the

state-mandated tests formerly known as CSAP (now TCAP).  However, AXL tests students in

every grade and uses standardized test results for the same purposes in all grades.[23]   This is not a

material difference and not one that suggests "demotion."

**E.  Ms. Waters performance was mixed**.  Ms. Waters had exceptional skill in

classroom management.  But she did not comply with AXL's strict approach to instruction.  Her

first grade class had behaved well, but did not fare well on AXL's formal assessment of student

progress.  AXL thought it imprudent for these student to "loop" with a teacher who had not

advanced their academics.  In contrast, the incoming third grade boys class was one in which

other teachers had struggled with basic classroom management.  Getting this class under better

control would in itself be a real benefit for these students.  Thus: the suggested or proposed

assignment was one in which Ms. Waters could exhibit her undisputed skill in classroom

management and the students would benefit from a class brought under better control.[24]

Like many teachers, Ms. Waters was better in some domains, challenged in others.

AXL's attempt to find an assignment that would allow Ms. Waters to exhibit her greatest

strength — quite possibly to shine — was not at all a "demotion."

**F.  Conclusion**.  There is nothing in AXL's policies or practices that made this a

"demotion."  It was a pure lateral re-assignment to a grade for which Ms. Waters was fully

---

[23]  <u>Philippon Affidavit</u>, ¶ 6 at 2-3.

[24]  See <u>Philippon Affidavit</u>, ¶ 5 at 2.

licensed, consistent with AXL's strong desire to assign teachers across gender boundaries, and calculated to allow Ms. Waters to benefit students who needed one of one her strongest skills: classroom management.  There was no proposed "demotion."

## VI.  There is No Dispute as to any Fact Material to a Viable Claim of Pregnancy Discrimination

The core of Ms. Waters' only real *federal* claim is Pregnancy Discrimination.  The Pregnancy Discrimination Act states:

> women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work.... [25]

Plaintiff constructs a bizarre theory that a *prima facie* case is made out under this statute if a pregnant Ms. Waters was "replaced" in the fall of 2011 in the second-grade-girls assignment she would have preferred by a "non-pregnant" employee.  *But Ms. Waters was not pregnant at this time*.  That is, on this theory, Waters was not in April, 2011, a person protected by the statute and there could be no pregnancy discrimination.[26]  Simply, this inapt theory has no relation to the facts here.  It is also unanchored in the statutory text and confuses pregnancy with a permanent status, such as race.  To illustrate the absurdity from the opposite angle, *per* Plaintiff's theory, she would be discriminated against if the non-pregnant 2011 Lisa Waters had taken a job from the pregnant 2010 Lisa Waters.  That is ridiculous.

---

[25]  42 U.S.C. § 2000e(k).

[26]  This theory would, of course, make sense if an employer fired an employee upon learning the employee was pregnant and immediately replaced her with a non-pregnant employee.  That factual context is irrelevant here.

An allegation of pregnancy discrimination following a new mother's return to work does not fit the mold Plaintiff labors to hammer it into because it focuses — precisely as the statute says — on whether pregnant employees are subject to less favorable treatment than non-pregnant employees with transitory or temporary conditions that rendered the employee "similar in their ability or inability to work."  The focus is not on pregnancy at the moment of employment termination, but on a comparison of accommodations and their outcomes.

Thus, if an employer accommodates employees who are recovering from other temporary conditions that conflict to a similar degree with working, but the employer does not likewise accommodate pregnancy, the statute is violated.  It follows that the *prima facie* case requires finding at least one employee who had similar inability to work, *not* due to pregnancy, who was treated more favorably than Ms. Waters — or perhaps a pattern of pregnant employees who all take leave and then lose their jobs.  What the statute zeroes in on is not who happens to be pregnant at some magical moment in time, but whether an employer fails in its duty to provide similar accommodations for temporary disabilities, including pregnancy.[27]

As it happens, in AXL's brief history it has repeatedly been called upon to give extended, unpaid leaves to pregnant employees (and, incidentally, to allow new mothers to breast feed an

---

[27]  Compare *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d at 583 (Pregnancy Discrimination Act claim by employee fired for absenteeism requires evidence that "the [similar] absences of nonpregnant employees [were] overlooked"); *Troupe v. The May Department Stores*, 20 F.3d 734, 738 (7th Cir. 1994) (same).  Note that whether Ms. Waters had student "test scores" comparable to another teacher is irrelevant to accommodation of pregnancy — the relevant comparisons concern "ability or inability to work" not a factor (testing) with no relation to pregnancy and that did not even bear on teacher evaluation.  See Philippon Affidavit, ¶ 6, n. 2.

infant at work).  In every one of those cases, excepting only Ms. Waters, the employee has

returned to work without incident (and in no other case has breast feeding at work caused the

slightest difficulty).[28]  Thus, Ms. Waters might conclude she was treated less favorably than other

*pregnant* employees — but that would not show *pregnancy* discrimination. To the contrary, the

pattern is of largely successful accommodations of pregnancy,[29] negating any inference of

pregnancy discrimination.  And in the brief history of this young and small school, AXL has

*never* been required (yet) to give similar leave or accommodation to a non-pregnant employee.

Only pregnancy, to date, has triggered unpaid leave for any AXL employee.[30] We can illustrate

the relevant comparison graphically:

|  | Pregnant/Took Extended-Unpaid Leave | Non-Pregnant/Took Extended-Unpaid leave |
| --- | --- | --- |
| Retained Employment | 4 employees (5 leaves) | 0 employees |
| Did Not Retain Employment | 1 employee | 0 employees |

As this chart demonstrates, unfavorable treatment of pregnant employees as a class is positively

---

[28]  Philippon Affidavit ¶ 9 at 3 (listing four employees other than Ms. Waters — one of whom took two pregnancy-related leaves and all of whom kept their jobs after taking leave).

[29]  Ms. Waters makes a variety of conclusory statements about alleged negativity toward pregnant employees, but fails to identify any other employee who was pregnant and suffered any adverse job action.  As Dr. Philippon has verified that there is no such case, identifying by name each AXL employee who has taken leave, worked after one or more pregnancies, and retained their job.  Philippon Affidavit ¶ 9 at 3.

[30]  *Id* ¶ 10, at 3-4.  Several employees have, of course, used routine sick leave allotments for various purposes.  But neither the common cold nor any brief misfortune that falls within the routine allowance for paid leave is legally "similar" to unpaid leaves lasting weeks, as enjoyed by Ms. Waters and other pregnant employees.

contradicted by the undisputed facts: only a significant degree of *favorable* treatment can be inferred.  At AXL, pregnant employees have taken leave no one else has enjoyed and all but one of those retained her job afterwards.

Notably, the one case that appears a bit similar to Ms. Waters and did not involve pregnancy concerned an employee whose brother — who lived out of state — attempted suicide. This teacher was uncertain if he would return to AXL.  This employee took no unpaid leave at all.  When he completed the school year, AXL held his job open until July.  Precisely as with Ms. Waters, the job was filled late — in July.  Precisely as with Ms. Waters, despite AXL's encouragement, the employee did *not* return.[31]  If this case is "similar" (which we doubt — the employee worked the entire year and thus was not similar in "inability to work"), so was the employer behavior (holding the job open to and only to July).  In both cases, the employees did *not* return to work at AXL.

Putting aside one case that shows similar treatment (but not similar inability to work), there are no cases in which illness or other reasons, not including pregnancy, caused employees to exceed their regular paid sick leave allowance.  There are thus no cases in which non-pregnant employees were similar as required by statute, and can be none in which non-existent similar employees were treated more favorably.  There are also multiple cases in which pregnant employees took unpaid leave, breast-fed new infants at work, and continued their career at AXL uninterrupted.  This pattern permits no inference of discrimination *based on pregnancy*.  Rather,

---

[31]  *Id.*

the only supportable inference is nondiscrimination.  There is no *prima facie* case.

### VII.  Plaintiff, Based on Her Admissions, Should be Estopped from Claiming She was Involuntarily Terminated

Plaintiff attempts to create a she-said/she-said dispute by denying she was offered the third grade assignment.  As shown above, this does not make out a claim of *pregnancy* discrimination, as there is no situation in which a non-pregnant employee with similar inability to work for some period was retained — and there are multiple cases of pregnant employees retaining their jobs following leave.

Nonetheless, Ms. Waters' own affidavit leads to the conclusion that she was responsible for the end of her employment.  Ms. Waters admits that Dr. Philippon suggested the third-grade assignment.  Waters claims she was willing to take that assignment.  Yet there is not a shred of evidence that Waters took any action to seek that assignment as it remained open for all of April, all of May, all of June, and into July.  Instead, she disparages this assignment, inaccurately, as a "demotion." Thus: it is undisputed — it is, indeed, her own account — that Waters knew the job was open, didn't like it, and did not follow up to secure it.  It is undisputed AXL made this opening available as one Ms. Waters could seek.  It is undisputed it stayed open for months.  Dr. Philippon has represented, without dispute, that she held the job open as she hoped Ms. Waters would take it.  Ms. Waters should now be estopped from claiming that AXL, by assigning another teacher at the tail-end of the teacher-hiring season, in July, involuntarily terminated Waters' work at AXL.  Simply, an employee is equitably estopped from claiming the employer took away an assignment that the employee — on her own account —  knew might be hers for

the taking, openly disliked and disparaged, and never lifted a finger to secure.

### VIII.  Plaintiffs' Public Policy Claim Should be Dismissed

With no viable federal claim in sight, we will not tarry long over Plaintiffs "public policy" tort.  Plaintiff misses that the very concept of a termination of employment violating "policy" so as to justify a tort is using the common law for a gap-filling function — not to create a judicial super-legislature that passes new and improved employment discrimination statutes. Thus, a wage and hour law first passed 100 years ago did not take into account modern theories of employment retaliation.  Yet it would obviously frustrate the "policy" of providing workers a legal scheme of redress to allow employers to fire an employee because he or she sought legally-proper scheduling or compensation.  Courts fill this gap by providing an employment-termination tort.[32]  This common law tort protects the integrity of a statute that was *not* concerned with employment termination, but that can be undermined by employer action.

Each of the statutes here is of a different order entirely.  Each had improper termination of employment squarely in legislative sights.  In each case Congress or the General Assembly enacted a law that articulates precisely when termination is forbidden and what remedy may ensue.  In each case, Congress and the General Assembly has revisited and refined employment discrimination law, sometimes extending it, sometimes drawing its outer bounds.  In no case has

---

[32]  Our description perfectly fits the case cited by Plaintiff:  *Bonidy v. Vail Valley Center for Aesthetic Dentistry*, 186 P.3d 80 (Colo. App. 2008).  There, the Colorado Department of Labor's rules enforce a law with "roots in legislation that was passed a century ago" and that does not expressly prohibit employee termination.  Biggs, J & Gomez, C. *Colorado Wage & Hour Law* (2d. Ed. 2008) at 3.

Congress or the General Assembly invited the courts to run off on a frolic re-writing the scope or remedies of these statutes.  There are no gaps to be filled, because wrongful termination is precisely what the legislature addressed — to and only to the extent the legislature said.

In addition to being a pure issue of state law, the "tort" theory propounded here is simply an attempt to erase legislative boundaries inconvenient to Plaintiff by turning the Court into a law-writing, rather than a law-applying body.

<strong>CONCLUSION</strong>

Dismissal is only warranted if a case truly lacks legal merit.  Summary judgment must ground law in undisputed fact.  This case, however, involves such strained and implausible efforts to construct a claim — any claim — that it fully deserves the sanction of being labeled meritless.  This is a statutory case.  One statute requires 50 employees, which AXL has never had.  One prohibits treating temporary disabilities other than pregnancy more favorably than pregnancy — a pattern supported with no facts.  One requires mediation, which Plaintiff and her counsel apparently believe they are privileged to ignore without so much as a by-your-leave.  And Plaintiff's disdain for each of the actual statutes is confirmed by her limitless tort theory.

Summary judgment should be granted.  Plaintiff's complaint should be dismissed.

RESPECTFULLY SUBMITTED,
KUTZ & BETHKE LLC

William P. Bethke # 11802
wpbethke@lawkb.com
Kristin A. Kutz, # 12368
kakutz@lawkb.com
363 S. Harlan Street, Suite 104
Lakewood, CO 80226
(303) 922-2003 (v)
(303) 922-2878 (fax)

Certificate of Service

I certify that the foregoing REPLY IN SUPPORT OF DISMISSAL AND SUMMARY JUDGMENT, together with the attachments listed below, was served on the Plaintiff by a true copy being electronically mailed and a true copy being placed in United States mail, first class, postage prepaid, this 11th day of September, 2012, respectively addressed to

lvanlandschoot@thelitbot.com

Leah P. VanLandschoot
The Litigation Boutique LLC
1720 S. Bellaire St., Ste. 805
Denver, CO 80222

Page 15 of 15

## AFFIDAVIT OF AUDRA PHILIPPON

I, Audra Philippon, being first duly sworn, depose and say:

1. I am the founder and Head of School of AXL Charter School (AXL).

2. AXL was founded in part on the belief that gender stereotypes interfere with effective education.  At the student or peer-interaction level, AXL uses single-gender classrooms to remove or lessen social barriers to student achievement.  At the instructional level, however, AXL believes students should have experiences with adults of both genders in various roles, and with teachers of both genders.  Thus, AXL engages in a systematic, though not rigid, practice of frequent cross-gender assignments (that is, of male teachers to girls' classrooms and female teachers to boys' classrooms).[1]  One limitation on this practice is that it is harder to find male elementary school teachers — that is, AXL has more female teachers than male teachers.  Regardless of pedagogical preference, this imbalance would necessitate assigning some female teachers to boys' classrooms.  I have reviewed all of the assignments that have been made from the founding of AXL in the 2008-09 school year to this year (2012-13).  In thirty-six cases (listed in Exhibit 1 to this affidavit) these have been cross-gender assignments, with 14 male teachers assigned to girls' classrooms and 22 female teachers assigned to boys' classrooms.  This is a routine part of assignment at AXL and does not carry the slightest negative connotation.

3. AXL uses "looping" (having one teacher stay with a single group of students through two grades) as one of several factors in making assignments.  Looping is not an inflexible practice and exceptions to looping are common.  These exceptions reflect multiple factors.  As an example, in many cases we assigned more experienced or skilled teachers to classrooms of students that needed those skills.  In other cases we tried to avoid repeating what appeared to be a poor match of a teacher with a particular class of students or grade.  From 2009-10 (the first year in which any teacher could "loop") to 2012-13, sixteen teachers have not looped.  In ten of those cases, the teacher changed assignment by two or more grades.  These assignments often connote positive things about a teacher, or involve a complex balancing of factors.  In no case has such an assignment been used, treated, or regarded as a demotion.

4. The AXL Family and Medical Leave policy is part of an employee handbook provided to all teachers.  That handbook contains a "disclaimer" that makes it clear AXL is not making contractual promises in the handbook that teachers should rely upon.  Instead, the handbook expressly allows AXL to change any policy at any time and to "address a situation in a manner

---

[1] At AXL we frequently refer to classrooms, or to groups of teachers, as a "crew."  This usage derives from a famous statement of one of the leaders in developing expeditionary learning that students and teachers are not passengers, but all "crew."

different from any described in this Handbook."  A true and correct copy of the disclaimer contained in the AXL employee handbook for the 2010-11 school year is attached as exhibit 2 to this affidavit.  ALX has at no time informed employees that they are eligible for leave under the Family and Medical Leave Act.

5.  Lisa Waters is a teacher with exceptional skills in classroom management: that is, she always keeps students in her classes well-behaved.  A reasonably orderly classroom is a prerequisite to effective instruction.  That is, this is an important skill as well as one of Lisa's strengths.  On the other hand, Lisa seemed, over time, to disagree more and more with AXL's instructional strategies, which are strict.  Her teaching in 2010-11 consistently deviated from specific instructions on how all AXL teachers were supposed to be conducting their classrooms. Further, her class of first grade girls made very poor academic progress, as reflected on standardized tests.  In the April 7, 2011, meeting, my proposal or suggestion was that Lisa should take over the in-coming third grade boys classroom.  This class was not well behaved and these students very much needed a teacher who would bring the class under control so that they would have a chance to engage in effective learning.  My belief then and now is that Lisa's clear strength in classroom management would have been a real benefit to this class of boys.  This would also have given her a good chance of a positive performance evaluation since she could show clear improvement in student behavior, at the very least.  Lisa was properly licensed to teach in this grade, as well as "highly qualified" under federal law.  This was by no means a "demotion," but was an attempt to match a class of third grade boys who needed a good classroom manager with a teacher who was excellent in that domain — though she was struggling with whether she would follow AXL's normal instructional methods.   It was also, frankly, my desire to give the class of first grade girls — whose behavior was not an issue — a teacher who would give them a better opportunity for academic growth in second grade.

6.  I understand that Lisa Waters is now denying that I offered her the third grade boys assignment and representing it is one she would have taken.  I recall, however, from the April conversation between Ms. Waters, myself and Tammi Avila, and later conversations, that Lisa not only refused the assignment, but offered reasons for her refusal.  Among other things, she expressed hostility to the idea of teaching a "tested" grade.  I understood this to be a reference to the onset of CSAP (now TCAP) testing at third grade.  But, frankly, this reason never made sense to me.  AXL conducts standardized testing of students at every grade level and regards effective instruction as informed by such data.  While CSAP/TCAP is a different test instrument, there is nothing about the onset of such testing that changes the basic approach of the School.  Further, AXL did not use any student test results as an element in teacher evaluations.[2]  In short, there was

---

[2]  The Colorado law known as Senate Bill 191 now requires that teacher evaluations include some consideration of student test data.  AXL did not implement this requirement in 2010-11 or 2011-12.

no material difference between second grade and third grade when it came to testing and teacher evaluation.

7.   After the April meeting I held the third grade boys assignment open until July.  I hoped Ms. Waters would change her mind and take this position.  But any person was free to ask for or seek the assignment during the period from April into July.  The person assigned in July proved to be a very unsatisfactory teacher who I sought to replace at the first available opportunity.  He was replaced for the second semester of the 2011-12 school year.  His replacement finished the year with that crew and was renewed, but did not loop with the crew for 2012-13.

8.   At no time did Ms. Waters, anyone on behalf of Ms. Waters, or any agency ask me — or to my knowledge any other person — whether AXL would mediate with Ms. Waters to resolve any concerns with the accommodation of her breast feeding needs.  To my best understanding we had worked out the one problem that arose in her schedule in a way that worked for Ms. Waters and for AXL.  I did not realize or have any idea that Ms. Waters felt there was anything further to be done or said about her breast feeding at work until I received a copy of the civil rights charge in this case.

9.   I have reviewed all of the records of AXL's employees for all years since 2008-09 to determine all the instances in which employees of AXL took unpaid leave of any kind because their paid leave had been consumed and they had a need for extended leave.  The only instances in which AXL employees sought and were given unpaid leave, to date, involved pregnancy and maternity.  In addition to Ms. Waters, four employees of AXL have taken unpaid leave due to pregnancy and childbirth and returned to work at AXL.  These employees have also engaged in breast feeding and been accommodated at work.  These employees are Tammi Avila (during 2008-09); Andrea Reimer (during 2009-10); Sylvia Valchar (during 2010-11); and Aria Huerta (during 2011-12 and again, at present).  All of these employees were retained and renewed following their pregnancy, use of unpaid leave, return to work, and accommodation of breast feeding.  In none of these cases was there an issue or difficulty with either their leave or the accommodation of breast feeding and none made a grievance, charge or complaint of any kind related to their pregnancy, maternity leave or accommodation.  None of these employees was subjected to adverse employment action.

10.   In searching for comparable cases, I found one other instance in which I held a job open for an employee who might not be returning until late in the hiring season.  This employee had a brother who lived out of state and attempted suicide in the Spring of 2009.  We knew the employee would be leaving to spend time with his brother and knew it was uncertain if he would return to work at AXL.  I held his job open until July, and then replaced him.  Though I took some steps to accommodate this employee (such as communicating with Teach for America

about his status), he did not take any unpaid leave to deal with this family crisis.  He never returned to work at AXL.

FURTHER AFFIANT SAYETH NOT

Dr. Audra Philippon

Sworn to and subscribed before me this 10th day of September, 2011

Notary Public

My Commission Expires: ___11/10/2012___

AMY WINSTON
NOTARY PUBLIC

STATE OF COLORADO
My Commission Expires 11/18/2012

Page 4 of  4

**Exhibit 1**
**AXL Teachers Assigned Across Genders**

| Year | Teacher | Assignment | Totals per Year |
|---|---|---|---|
| 2008-09 | Lander Arrieta | K Girls | Male Teachers assigned to Girls' Crews = 3 |
|  | Clare Nelson | 1 Boys |  |
|  | Laura O'Dowd | 2 Boys | Female Teachers assigned Boys' Crews = 5 |
|  | Nichole Bowen | 3 Boys |  |
|  | Kevin Waggoner | 4 Girls |  |
|  | Andrea Riemer | 4 Boys |  |
|  | Tammi Avila | 5 Boys |  |
|  |  |  |  |
| 2009-10 | Caitlin Howe | K Boys | Male Teachers assigned to Girls' Crews = 1 |
|  | Becky Timmerman | 1 Boys |  |
|  | Clare Nelson | 2 Boys | Female Teachers assigned Boys' Crews = 7 |
|  | Laura O'Dowd | 3 Boys |  |
|  | Nichole Bowen | 4 Boys |  |
|  | Mark Huebner | 5 Girls |  |
|  | Andrea Riemer | 5 Boys |  |
|  | Felicia Soifer | 6 Boys |  |
|  |  |  |  |
| 2010-11 | Caitlin Howe | K Boys | Male Teachers assigned to Girls' Crews = 3 |
|  | Reed McCoy | K Girls |  |
|  | Becky Timmerman | 2 Boys | Female Teachers assigned Boys' Crews = 5 |
|  | Carolyn Brug | 3 Boys |  |
|  | Shannon Harrison | 5 Boys |  |
|  | Brent Reckman | 5 Girls |  |
|  | Leah Miller | 7 Boys |  |
|  | Erik Mikulak | 7 Girls |  |
|  |  |  |  |
| 2011-12 | Caitlin Howe | 1 Boys | Male Teachers assigned to Girls' Crews = 3 |
|  | Reed McCoy | 1 Girls |  |
|  | Shannon Harrison | 6 Boys | Female Teachers assigned Boys' Crews = 4 |
|  | Joe Riehl | 6 Girls |  |
|  | Natalie Osborn | 7 Boys |  |
|  | Erik Mikulak | 8 Girls |  |
|  | Leah Miller | 8 Boys |  |

| | | | |
|---|---|---|---|
| **2012-13** | **Jill Whitescarver** | **2 Boys** | **Male Teachers assigned to Girls' Crews = 4** |
| | **Holly Eakins** | **4 Boys** | |
| | **Anna Foley** | **5 Boys** | **Female Teachers assigned Boys' Crews = 1** |
| | **Natalie Osborn** | **7 Boys** | |
| | **Erik Mikulak** | **8 Girls** | |
| | | | |

EXHIBIT 2

AXL Academy

If all AXL community members act with respect, responsibility, craftsmanship,
stewardship, courage, and integrity in our relationship with each other,
then all students achieve.
This Crew Handbook is intended to serve as a guide to all AXL crew members,
describing our basic personnel guidelines.  AXL Academy reserves the right to
alter established employment guidelines that may not be contained in the
Handbook.

AXL Academy reserves the right to make changes with or without notice to the
guidelines described in this Handbook; moreover, because it is impossible to
anticipate every situation that may arise, AXL Academy reserves the right to
address a situation in a manner different from any described in this Handbook.

## SCHOOL INFORMATION

AXL Academy
14100 E Jewell Ave
Aurora, CO  80012
303-377-0758 phone
303-597-1547 fax
www.axlacademy.org

Crew member email addresses consist of the crew member's first name
@axlacademy.org.  For example, Audra Philippon's email address is
audra@axlacademy.org.

In the event of emergency or need to reach all AXL crew members immediately,
please use the attached contact sheet as a phone tree.  You will be called by the
person listed above you alphabetically, and you are responsible for calling the
next person below you alphabetically as quickly as possible with the information
given.  If you are not able to speak to the person, leave the information on his or
her in a voicemail AND call the person below him or her to keep the phone tree
moving.

AFFIDAVIT OF BART SKIDMORE

I, Bart Skidmore, being first duly sworn, depose and say:

1. I own and operate a business that provides comprehensive financial services to a number of Colorado charter schools, including AXL Charter School.

2. I am familiar with all of AXL's financial and payroll records.

3. AXL has never had 50 employees. It has never come close to having 50 employees. This fact is not subject to any ambiguity or doubt whatsoever.

4. As an example, attached are two copies of payroll records.  The first (exhibit 1) from the Paycheck® system reflects two pay periods at the beginning of the 2010-11 school year.  In two full pay periods AXL issued 68 paychecks, or 34 paychecks per pay period, representing 34 employees.  The second (exhibit 2) from the Paycheck of New York LLC system reflects a single pay period at the beginning of the 2011-12 school year.  This record reflects 35 paychecks in one pay period, representing 35 employees. As with exhibits 1 and 2, every payroll record for every pay period in the history of AXL — and any other contractual or financial record — would reflect substantially fewer than 50 employees.

4. AXL has no affiliations with any other corporate body that employs anyone.  AXL has a supporting building corporation, the AXL Academy Foundation.  While this is a bona fide separate corporation, it is dedicated to supporting AXL.  The AXL Academy Foundation does not have, and has never had, any employees.  The AXL Academy Foundation is used by AXL in the same way that Colorado charter schools typically use building corporations: to facilitate debt financing of facility or building needs.  With certain exceptions, public charter schools are prohibited by the so-called TABOR Amendment to the Colorado Constitution from entering multiple-fiscal-year financial obligations.  This a barrier to a school borrowing money to own or improve a facility.  A private, non-profit building corporation, however, can hold a property interest in the facility and enter debt secured by that property interest.  Then the charter school will enter a lease with the building corporation which permits the school to terminate the lease at the end of any fiscal year.  This establishes compliance with TABOR for the school, while giving the lender some security.  Such building corporations are pass-through mechanisms in which "rent" paid by a school is turned into debt service paid by a private, non-profit supporting organization.  The AXL Academy Foundation, like most building corporations, has little real business activity and no employees whatsoever.

Page 1 of 2

5. Other than the AXL Academy Foundation, AXL is not affiliated with any other corporate entity.

FURTHER AFFIANT SAYETH NOT

_____
Bart Skidmore

Sworn to and subscribed before me this 10th day of September, 2012

_____
Notary Public

My commission expires: 11/18/2012

AMY WINSTON
NOTARY PUBLIC

STATE OF COLORADO
My Commission Expires 11/18/20..

**PAYCHEX**

0065 1300-3801   AXL Academy

# CHECK REGISTER

**(Requested Check Dates 09/01/10 - 09/30/10)**

0065 1300-3801
AXL Academy
Run Date 09/04/12  10:53 AM

EXHIBIT I

| COMPANY BANK ACCOUNT | NAME | ID | CHECK DATE | CHECK NUMBER | DIRECT DEPOSIT AMOUNT | NEGOTIABLE CHECK AMOUNT |
|---|---|---|---|---|---|---|
| WELLS FARGO BANK, NA<br>Acct # xxxxx8426<br>R & T 102000076 | Byrne, Nathan | 4 | 09/03/10 | 10388 | 1,259.26 | |
| | Faust, Tracie A | 6 | 09/03/10 | 10389 | 1,132.56 | |
| | Groen, Anthony J | 51 | 09/03/10 | 10390 | 351.14 | |
| | Hemenway, Lodia E | 38 | 09/03/10 | 10391 | 1,437.40 | |
| | Hirko, Allison A | 53 | 09/03/10 | 10392 | 258.78 | |
| | Kain, Lee Ann | 37 | 09/03/10 | 10393 | 1,479.31 | |
| | Philippon, Audra M | 19 | 09/03/10 | 10394 | 2,719.16 | |
| | Schiller, Rachel E | 22 | 09/03/10 | 10395 | 1,427.81 | |
| | Avila, Tammi J | 8 | 09/03/10 | 10396 | 1,670.03 | |
| | Boehme, Emily | 2 | 09/03/10 | 10397 | 1,193.57 | |
| | Bowen, Nichole M | 3 | 09/03/10 | 10398 | 1,436.17 | |
| | Brewington Huerta, Aria J | 50 | 09/03/10 | 10399 | 1,160.44 | |
| | Brug, Carolyn J | 43 | 09/03/10 | 10400 | 1,450.31 | |
| | Chung, Sarah H | 49 | 09/03/10 | 10401 | 1,322.09 | |
| | Duggan, Timothy M | 40 | 09/03/10 | 10402 | 1,003.31 | |
| | Grush, Kira A | 46 | 09/03/10 | 10403 | 1,241.88 | |
| | Harrison, Shannon M | 7 | 09/03/10 | 10404 | 1,372.90 | |
| | Howe, Caitlin S | 10 | 09/03/10 | 10405 | 1,241.62 | |
| | Long, Bryan M | 45 | 09/03/10 | 10406 | 1,125.30 | |
| | McCoy, Reed R | 48 | 09/03/10 | 10407 | 1,421.62 | |
| | Mikulak, Erik P | 44 | 09/03/10 | 10408 | 1,219.08 | |
| | Miller, Leah M | 15 | 09/03/10 | 10409 | 1,209.28 | |
| | Milligan, Audrey N | 16 | 09/03/10 | 10410 | 1,003.33 | |
| | Nelson, Clare M | 17 | 09/03/10 | 10411 | 317.53 | |
| | O'Dowd, Laura K | 47 | 09/03/10 | 10412 | 84.83 | |
| | Reckman, Brent W | 18 | 09/03/10 | 10413 | 1,643.74 | |
| | Riehl, Joseph P | 42 | 09/03/10 | 10414 | 1,375.51 | |
| | Schacks, Julie M | 23 | 09/03/10 | 10415 | 1,607.51 | |
| | Seifert, Allison J | 39 | 09/03/10 | 10416 | 1,304.34 | |
| | Timmerman, Becky | 26 | 09/03/10 | 10417 | 1,375.48 | |
| | Waters, Lisa M | 28 | 09/03/10 | 10418 | 1,296.28 | |
| | Williams, Micah T | 29 | 09/03/10 | 10419 | 1,222.99 | |
| | Williams, Nancy D | 52 | 09/03/10 | 10420 | 1,306.26 | |
| | Zobeck, Kaaren | 41 | 09/03/10 | 10421 | 947.38 | |
| | Byrne, Nathan | 4 | 09/21/10 | 10422 | 1,261.26 | |
| | Faust, Tracie A | 6 | 09/21/10 | 10423 | 1,135.75 | |
| | Groen, Anthony J | 51 | 09/21/10 | 10424 | 293.38 | |
| | Hemenway, Lodia E | 38 | 09/21/10 | 10425 | 1,439.40 | |
| | Hirko, Allison A | 53 | 09/21/10 | 10426 | 260.78 | |
| | Kain, Lee Ann | 37 | 09/21/10 | 10427 | 1,481.31 | |
| | Philippon, Audra M | 19 | 09/21/10 | 10428 | 2,982.78 | |
| | Schiller, Rachel E | 22 | 09/21/10 | 10429 | 1,429.81 | |
| | Avila, Tammi J | 8 | 09/21/10 | 10430 | 1,672.03 | |
| | Boehme, Emily | 2 | 09/21/10 | 10431 | 1,195.57 | |
| | Bowen, Nichole M | 3 | 09/21/10 | 10432 | 1,438.17 | |
| | Brewington Huerta, Aria J | 50 | 09/21/10 | 10433 | 1,162.44 | |
| | Brug, Carolyn J | 43 | 09/21/10 | 10434 | 1,452.31 | |
| | Chung, Sarah H | 49 | 09/21/10 | 10435 | 1,324.09 | |
| | Farkas, Deborah | 54 | 09/21/10 | 10436 | 1,366.96 | |
| | Grush, Kira A | 46 | 09/21/10 | 10437 | 1,183.94 | |

Period Start - End Dates     08/21/10 - 09/20/10
Check Dates                        09/03/10 - 09/21/10

**PAYCHEX**

0065 1300-3801   AXL Academy

# CHECK REGISTER

**(Requested Check Dates 09/01/10 - 09/30/10)**

| COMPANY BANK ACCOUNT | NAME | ID | CHECK DATE | CHECK NUMBER | DIRECT DEPOSIT AMOUNT | NEGOTIABLE CHECK AMOUNT |
|---|---|---|---|---|---|---|
| | Harrison, Shannon M | 7 | 09/21/10 | 10438 | 1,374.90 | |
| | Howe, Caitlin S | 10 | 09/21/10 | 10439 | 1,423.62 | |
| | Long, Bryan M | 45 | 09/21/10 | 10440 | 1,127.30 | |
| | McCoy, Reed R | 48 | 09/21/10 | 10441 | 1,149.33 | |
| | Mikulak, Erik P | 44 | 09/21/10 | 10442 | 1,211.28 | |
| | Miller, Leah M | 15 | 09/21/10 | 10443 | 1,319.53 | |
| | Milligan, Audrey N | 16 | 09/21/10 | 10444 | 896.83 | |
| | Nelson, Clare M | 17 | 09/21/10 | 10445 | 1,645.74 | |
| | O'Dowd, Laura K | 18 | 09/21/10 | 10446 | 1,195.95 | |
| | Reckman, Brent W | 47 | 09/21/10 | 10447 | 1,377.48 | |
| | Riehl, Joseph P | 42 | 09/21/10 | 10448 | 1,609.51 | |
| | Schlacks, Julie M | 23 | 09/21/10 | 10449 | 1,306.34 | |
| | Seifert, Allison J | 39 | 09/21/10 | 10450 | 1,377.48 | |
| | Timmerman, Becky | 26 | 09/21/10 | 10451 | 1,298.28 | |
| | Waters, Lisa M | 28 | 09/21/10 | 10452 | 1,224.99 | |
| | Williams, Micah T | 29 | 09/21/10 | 10453 | 1,225.76 | |
| | Williams, Nancy D | 52 | 09/21/10 | 10454 | 1,308.26 | |
| | Zobeck, Ksarem | 41 | 09/21/10 | 10455 | 949.38 | |
| | | | | **BANK ACCOUNT TOTAL** *68 Transaction(s)* | **87,702.88** | **0.00** |
| | | | | **COMPANY TOTALS FOR THIS PERIOD** *68 Transaction(s)* | **87,702.88** | **0.00** |

0065 1300-3801   AXL Academy
Run Date 09/04/12   10:53 AM

Period Start - End Dates          08/21/10 - 09/20/10
Check Dates                       09/03/10 - 09/21/10

Check Register
Page 2 of 2
CHKRECREG

EXHIBIT 2

**PAYCHEX OF NEW YORK LLC**

# PAYROLL REGISTER - MULTI STATE
## AXL ACADEMY - D595

CHECK DATE 09/06/2011  WEEK 37
PERIOD BEGIN 08/21/2011  PERIOD END 09/05/2011

09/04/2012
PAGE  1

PHONE (303)307-0505   FAX (303)307-8680

| EMPLOYEE NAME / ID SSN STATE/FRQ STS LOCATION | EARNINGS DESCR | PAY RATE | HOURS | CURRENT AMOUNT | HOURS | YTD AMOUNT | DEDUCTIONS DESCR | CURRENT AMOUNT | YTD AMOUNT | TAXES DESCR | CURRENT AMOUNT | YTD AMOUNT | NET PAY / CHECK NO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **BYRNE, NATHAN**<br>4 XXX-XX-XXXX CO CO CO<br>24 M1/M1 100<br>1545.00 Salary<br>Last Check Date 12/30/2011 | 1 REGULAR<br>1P MED125<br>DD DEN125<br>P1 EE PERA<br>PM CO PER-M | | | 154500<br>-638<br><br>-12309<br>22695 | | 2781000<br>-6048<br>-20780<br>-220335<br>396613 | C9 CHECKING NE | 124381 | 2228969 | FEDERAL<br>MEDICARE<br>CO STATE<br>9200-AAAA | 10441<br>2231<br>4300<br>200 | 185832<br>39936<br>77300<br>1800 | .000<br>DIRDEP |
| EMPLOYEE TOTAL | | | | 141553<br>154500 | | 2781000 | | 124381 | 2228969 | | 17172 | 304868 | |
| **KAIN, LEE ANN**<br>37 XXX-XX-XXXX CO CO CO<br>24 M1/M1 100<br>1875.00 Salary<br>Last Check Date 12/30/2011 | 1 REGULAR<br>1P MED125<br>DD DEN125<br>P1 EE PERA<br>PM CO PER-M | | | 187500<br><br><br>-6048<br>27656 | | 3375000<br>-6048<br>-22048<br>-267750<br>481967 | C9 CHECKING NE | 147598 | 2628693 | FEDERAL<br>MEDICARE<br>CO STATE<br>9200-AAAA | 15083<br>2719<br>6900<br>200 | 267628<br>48533<br>132500<br>1800 | .000<br>DIRDEP |
| EMPLOYEE TOTAL | | | | 172500<br>187500 | | 3079154<br>3375000 | | 147598 | 2628693 | | 24902 | 450461 | |
| **PHILIPPON, AUDRA M**<br>19 XXX-XX-XXXX CO CO CO<br>24 M4/M4 100<br>3784.38 Salary<br>Last Check Date 12/30/2011 | 1 REGULAR<br>1P MED125<br>DD DEN125<br>P1 EE PERA<br>PM CO PER-M | | | 378438<br>-638<br>-1432<br>-30160<br>55608 | | 6811884<br>-6048<br>-2864<br>-544230<br>979626 | C9 CHECKING NE | 295181 | 5327910 | FEDERAL<br>MEDICARE<br>CO STATE<br>9200-AAAA | 34298<br>5467<br>11700<br>200 | 619690<br>98662<br>210700<br>1800 | .000<br>DIRDEP |
| EMPLOYEE TOTAL | | | | 346846<br>378438 | | 6258742<br>6811884 | | 295181 | 5327910 | | 51665 | 930832 | |
| **SCHILLER, RACHEL E**<br>22 XXX-XX-XXXX CO CO CO<br>24 S1/S1 100<br>1875.00 Salary<br>Last Check Date 12/30/2011 | 1 REGULAR<br>1P MED125<br>DD DEN125<br>P1 EE PERA<br>PM CO PER-M | | | 187500<br>-638<br>-1276<br>-26908<br>27562 | | 3375000<br>-6048<br>-1276<br>-269408<br>484950 | C9 CHECKING NE | 141413 | 2549749 | FEDERAL<br>MEDICARE<br>CO STATE<br>9200-AAAA | 20791<br>2709<br>6800<br>200 | 375190<br>48829<br>122700<br>1800 | .000<br>DIRDEP |
| EMPLOYEE TOTAL | | | | 171913<br>187500 | | 3098268<br>3375000 | | 141413 | 2549749 | | 30500 | 548519 | |
| **WOERTENDYKE, GAR**<br>60 XXX-XX-XXXX CO CO CO<br>24 S2/S2 100<br>2500.00 Salary<br>Last Check Date 12/30/2011 | 1 REGULAR<br>1P MED125<br>P1 EE PERA<br>PM CO PER-M | | | 250000<br><br>-20000<br>36875 | | 2000000<br>-1728<br>-159860<br>295744 | C9 CHECKING NE | 185917 | 1486968 | FEDERAL<br>MEDICARE<br>CO STATE<br>9200-AAAA | 31458<br>3625<br>8800<br>200 | 251268<br>28976<br>70400<br>800 | .000<br>DIRDEP |
| EMPLOYEE TOTAL | | | | 230000 | | 1838412 | | 185917 | 1486968 | | 44083 | 351444 | |

PAYCHEX OF NEW YORK LLC

PAYROLL REGISTER - MULTI STATE
AXL ACADEMY - DS95

CHECK DATE 09/06/2011  WEEK 37
PERIOD BEGIN 08/21/2011  PERIOD END 09/05/2011

09/04/2012
PAGE   2

PHONE (303)307-0505          FAX (303)307-8680

| EMPLOYEE NAME ID SSN STATE/FRQ STS LOCATION | EARNINGS DESCR | PAY RATE | HOURS | CURRENT AMOUNT | YTD HOURS | YTD AMOUNT | DEDUCTIONS DESCR | CURRENT AMOUNT | YTD AMOUNT | TAXES DESCR | CURRENT AMOUNT | YTD AMOUNT | NET PAY CHECK NO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **BOWEN, NICHOLE** 3 XXX-XX-XXXX CO CO 24 M3/M3 200 1680.00 Salary Last Check Date 12/30/2011 | 1 REGULAR 1P EE PERA PM CO PER-M | | | 168000 -1440 24780 | | 3024000 -241920 435456 | C9 CHECKING NE | 140657 | 2543426 | FEDERAL MEDICARE CO STATE 9200-AAAA | 7767 2436 3500 200 | 139806 43848 53200 1800 | 000 DIRDEP |
| EMPLOYEE TOTAL | | | | 168000 154560 | | 3024000 2782080 | | 140657 | 2543426 | | 13903 | 238654 | |
| **BOEHME, EMILY** 2 XXX-XX-XXXX CO CO 24 S0/S0 200 1583.33 Salary Last Check Date 12/30/2011 | 1 REGULAR 1P MED125 DD DEN125 P1 EE PERA PM CO PER-M VP VIS125 | | | 158333 -638 -1276 -12598 23227 -225 | | 2849532 -6048 -1276 -227292 409138 -1000 | C9 CHECKING NE | 117442 | 2120926 | FEDERAL MEDICARE CO STATE 9200-AAAA | 18647 2283 6300 200 | 336594 41196 113400 1800 | 000 DIRDEP |
| EMPLOYEE TOTAL | | | | 158333 144872 | | 2849532 2613916 | | 117442 | 2120926 | | 27430 | 492990 | |
| **AVILA, TAMMI J** 8 XXX-XX-XXXX CO CO CO 24 S3/S3 200 2291.67 Salary Last Check Date 12/30/2011 | 1 REGULAR 1P MED125 DD DEN125 P1 EE PERA PM CO PER-M VP VIS125 | | | 229167 -15851 -1838 -16900 31160 -225 | | 4124768 -28712 -25724 -304264 547690 -8548 | C9 CHECKING NE | 165458 | 2980758 | FEDERAL MEDICARE CO STATE 9200-AAAA | 19112 3063 6500 200 | 344498 55152 116900 1800 | 000 DIRDEP |
| EMPLOYEE TOTAL | | | | 229167 194353 | | 4124768 3499108 | | 165458 | 2980758 | | 28895 | 518350 | |
| DEPARTMENT TOTAL | PM CO PER-M RD REGULAR | | | 170396 | 1000 | 3239052 150000 | | 894490 | 17619125 | ER MEDCR CO ER SUI | 16751 16751 | 348442 220/74 | |
| | | | | 1062812 1157938 | 65033 | 2070/7558 22589284 | | 894490 | 17619125 | | 185073 | 3436875 | |
| **ADMIN** **DEPARTMENT TOTALS** 5 EMPLOYEES   5 CHECKS | 1 REGULAR 1P MED125 DD DEN125 P1 EE PERA | | | 1157938 -2708 -92418 | 64033 | 22439284 -341248 -46968 -1806630 | C9 CHECKING NE | 894490 | 17619125 | FEDERAL MEDICARE CO STATE 9200-AAAA | 112071 16751 38500 1000 | 1995657 326376 753800 12600 | 000 |
| DEPARTMENT TOTAL | | | | 250000 | | 20000000 | | | | | | | 000 |
| EMPLOYEE TOTAL | | | | | | | | | | ER MEDCR | 16751 168322 | 3088433 326368 | |
| **PAYCHEX OF NEW YORK LLC** | | | | | | | | | | | | | |

# PAYROLL REGISTER - MULTI STATE
## AXL ACADEMY - D595

**CHECK DATE 09/06/2011  WEEK 37**
**PERIOD BEGIN 08/21/2011  PERIOD END 09/05/2011**

09/04/2012
PAGE 3

**PAYCHEX OF NEW YORK LLC**  PHONE (303)307-0505  FAX (303)307-8680

| EMPLOYEE NAME | ID SSN STATE/FRQ STS LOCATION | EARNINGS DESCR | PAY RATE | HOURS | CURRENT AMOUNT | HOURS | YTD AMOUNT | DEDUCTIONS DESCR | CURRENT AMOUNT | YTD AMOUNT | TAXES DESCR | CURRENT AMOUNT | YTD AMOUNT | NET PAY CHECK NO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BREWINGTON HUERTA, ARI | 50 XXX-XX-XXXX CO CO CO CO | 1 REGULAR | | | 168000 | | 2720900 | C9 CHECKING NE | 123524 | 1977943 | FEDERAL | 8253 | 124383 | .000 DIRDEP |
| | 24 S4/S4 200 | 1E MED125 | | | -15851 | | -271273 | | | | MEDICARE | 2163 | 35101 | |
| | 1680.00 Salary | DP DEN125 | | | -2750 | | -24798 | | | | CO STATE | 3100 | 87800 | |
| | Last Check Date 12/30/2011 | P1 EE PERA | | | -11934 | | -193653 | | | | 9200-AAAA | 200 | 1800 | |
| | | PM CO PER-M | | | 22003 | | 348184 | | | | | | | |
| | | VP VIS125 | | | -225 | | -4149 | | | | | | | |
| EMPLOYEE TOTAL | | | | | 137240 | | 2227027 | | 123524 | 1977943 | | 13716 | 249084 | |
| BROWN, LATANYA | 57 XXX-XX-XXXX CO CO CO | 1 REGULAR | | | 108333 | 15750 | 630208 | C9 CHECKING NE | 84841 | 500540 | FEDERAL | 9554 | 50311 | .000 DIRDEP |
| | 24 S1/S1 200 | P1 EE PERA | | | -8667 | | -50418 | | | | MEDICARE | 1571 | 9139 | |
| | 1083.33 Salary TRM-10/15/2011 | PM CO PER-M | | | 15979 | | 91183 | | | | CO STATE | 3500 | 19000 | |
| | Last Check Date 10/15/2011 | | | | | | | | | | 9200-AAAA | 200 | 800 | |
| EMPLOYEE TOTAL | | | | | 99666 | | 579790 | | 84841 | 500540 | | 14825 | 79250 | |
| CHUNG, SARAH H | 49 XXX-XX-XXXX CO CO CO | 1 REGULAR | | | 166667 | 15750 | 2999768 | C9 CHECKING NE | 133138 | 2364068 | FEDERAL | 12979 | 232754 | .000 DIRDEP |
| | 24 S3/S3 200 | 1E MED125 | | | -13333 | | -6048 | | | | MEDICARE | 2417 | 43408 | |
| | 1666.67 Salary | P1 EE PERA | | | | | -239490 | | | | CO STATE | 4600 | 112200 | |
| | Last Check Date 12/30/2011 | PM CO PER-M | | | 24583 | | 431098 | | | | 9200-AAAA | 200 | 1800 | |
| EMPLOYEE TOTAL | | | | | 153334 | | 2754230 | | 133138 | 2364068 | | 20196 | 390162 | |
| FARR, RYAN | 59 XXX-XX-XXXX CO CO CO | 1 REGULAR | | | 177083 | 2900 | 744582 | C9 CHECKING NE | 134217 | 569552 | FEDERAL | 18954 | 76910 | .000 DIRDEP |
| | 24 S1/S1 200 | DP DEN125 | | | -638 | | -1276 | | | | MEDICARE | 2558 | 10778 | |
| | 1770.83 Salary | P1 EE PERA | | | -14116 | | -59466 | | | | CO STATE | 6400 | 26000 | |
| | Last Check Date 12/30/2011 | PM CO PER-M | | | 26026 | | 109313 | | | | 9200-AAAA | 200 | 600 | |
| EMPLOYEE TOTAL | | | | | 162329 | 2900 | 683840 | | 134217 | 569552 | | 28112 | 114288 | |
| GARZA, ODILIA | 66 XXX-XX-XXXX CO CO CO | 1 REGULAR | | | 177083 | 2900 | 708332 | C9 CHECKING NE | 146367 | 586646 | FEDERAL | 9704 | 38992 | .000 DIRDEP |
| | 24 S5/S5 200 | DP DEN125 | | | -638 | | -1276 | | | | MEDICARE | 2558 | 10252 | |
| | 1770.83 Salary | P1 EE PERA | | | -14116 | | -55566 | | | | CO STATE | 3500 | 14200 | |
| | Last Check Date 12/30/2011 | PM CO PER-M | | | 26026 | | 104292 | | | | 9200-AAAA | 200 | 400 | |
| EMPLOYEE TOTAL | | | | | 162329 | | 650490 | | 146367 | 586646 | | 15962 | 63844 | |

# PAYROLL REGISTER - MULTI STATE
## AXL ACADEMY - DS95

**CHECK DATE 09/06/2011   WEEK 37**
**PERIOD BEGIN 08/21/2011   PERIOD END 09/05/2011**

09/04/2012
PAGE   4

**PAYCHEX OF NEW YORK LLC**

PHONE (303)307-0505      FAX (303)307-8680

| EMPLOYEE NAME / ID SSN STATE/FRQ STS LOCATION | EARNINGS DESCR | PAY RATE | HOURS | CURRENT AMOUNT | YTD HOURS | YTD AMOUNT | DEDUCTIONS DESCR | CURRENT AMOUNT | YTD AMOUNT | TAXES DESCR | CURRENT AMOUNT | YTD AMOUNT | NET PAY / CHECK NO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **GLYNN, JESSICA** 63 XXX-XX-XXXX CO CO CO  24 M2/M2 200  1770.83 Salary  Last Check Date 12/30/2011 | 1 REGULAR | | | 177083 | | 708332 | C9 CHECKING NE | 144215 | 577260 | FEDERAL | 11333 | 45332 | 000 DIRDEP |
| | P1 EE PERA | | | -14167 | | -56668 | | | | MEDICARE | 2568 | 10272 | |
| | PM CO PER-M | | | 26120 | | 104480 | | | | CO STATE | 4600 | 18400 | |
| | | | | | | | | | | 9200-AAAA | 200 | 400 | |
| EMPLOYEE TOTAL | | | | 162916 / 177083 | | 651664 / 708332 | | 144215 | 577260 | | 18701 | 74404 | |
| **GRUPE, HOLLY** 61 XXX-XX-XXXX CO CO CO  24 M3/M3 200  115.0000 Hourly  Last Check Date 09/21/2011 | 1 REGULAR | | 1400 | 161000 | 2700 | 310500 | C9 CHECKING NE | 135490 | 270661 | FEDERAL | 6895 | 6895 | 000 DIRDEP |
| | P1 EE PERA | | | -12880 | | -24840 | | | | MEDICARE | 2335 | 4504 | |
| | PM CO PER-M | | | 23748 | | 45800 | | | | CO STATE | 3200 | 3200 | |
| | | | | | | | | | | 9200-AAAA | 200 | 400 | |
| EMPLOYEE TOTAL | | | 1400 | 148120 / 161000 | 2700 | 285560 / 310500 | | 135490 | 270661 | | 12630 | 14999 | |
| **GRUSH, KIRA A** 46 XXX-XX-XXXX CO CO CO  24 S2/S2 200  1583.33 Salary  Last Check Date 12/30/2011 | 1 REGULAR | | | 158333 | | 2850232 | C9 CHECKING NE | 118033 | 2106990 | FEDERAL | 12992 | 233884 | 000 DIRDEP |
| | H1 HSA.EE I | | | -8333 | | -149994 | HD HSA DIRECT | 8333 | 141661 | MEDICARE | 2175 | 39150 | |
| | P1 EE PERA | | | -12000 | | -216014 | HR HSA DIRECT | -8333 | -141661 | CO STATE | 4600 | 102400 | |
| | PM CO PER-M | | | 22125 | | 388835 | | | | 9200-AAAA | 200 | 1800 | |
| EMPLOYEE TOTAL | | | | 138000 / 158333 | | 2484424 / 2850232 | | 118033 | 2106990 | | 19967 | 377234 | |
| **GULLICKSON, ANNE** 67 XXX-XX-XXXX CO CO CO  24 S1/S1 200  1458.33 Salary  Last Check Date 12/30/2011 | 1 REGULAR | | | 145833 | | 583332 | C9 CHECKING NE | 112022 | 448488 | FEDERAL | 14729 | 58916 | 000 DIRDEP |
| | P1 EE PERA | | | -1667 | | -46668 | | | | MEDICARE | 2115 | 8460 | |
| | PM CO PER-M | | | 21510 | | 86040 | | | | CO STATE | 5100 | 20400 | |
| | | | | | | | | | | 9200-AAAA | 200 | 400 | |
| EMPLOYEE TOTAL | | | | 134166 / 145833 | | 536664 / 583332 | | 112022 | 448488 | | 22144 | 88176 | |

# PAYROLL REGISTER - MULTI STATE

**AXL ACADEMY - D595**

**CHECK DATE 09/06/2011   WEEK 37**
**PERIOD BEGIN 08/21/2011   PERIOD END 09/05/2011**

09/04/2012
PAGE 5

**PAYCHEX OF NEW YORK LLC**

PHONE (303)307-0505   FAX (303)307-8680

| EMPLOYEE NAME / ID SSN STATE/FRQ STS LOCATION | EARNINGS DESCR | PAY RATE | HOURS | CURRENT AMOUNT | HOURS | YTD AMOUNT | DEDUCTIONS DESCR | CURRENT AMOUNT | YTD AMOUNT | TAXES DESCR | CURRENT AMOUNT | YTD AMOUNT | NET PAY / CHECK NO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **HARRISON, SHANNON M** | 1 REGULAR | | | 166667 | | 2999768 | C9 CHECKING NE | 136250 | 2449384 | FEDERAL | 10667 | 191138 | .000 |
| 7 XXX-XX-XXXX CO CO CO | 1P MED125 | | | | | -6048 | | | | MEDICARE | 2417 | 43408 | DIRDEP |
| 24 S4/S4 200 | P1 EE PERA | | | -13333 | | -239490 | | | | CO STATE | 3800 | 68500 | |
| 1666.67 Salary | PM CO PER-M | | | 24583 | | 431098 | | | | 9200-AAAA | 200 | 1800 | |
| Last Check Date 12/30/2011 | | | | | | | | | | | | | |
| EMPLOYEE TOTAL | | | | 153334 / 166667 | | 2754230 / 2999768 | EMPLOYEE TOTAL | 136250 | 2449384 | EMPLOYEE TOTAL | 17084 | 304846 | |
| **HOWE, CAITLIN S** | 1 REGULAR | | | 185417 | | 3337268 | C9 CHECKING NE | 139569 | 2534786 | FEDERAL | 20129 | 361146 | .000 |
| 10 XXX-XX-XXXX CO CO CO | 1P MED125 | | | | | -6048 | | | | MEDICARE | 2668 | 48262 | DIRDEP |
| 24 S1/S1 200 | DD DEN125 | | | -1432 | | -2864 | | | | CO STATE | 6700 | 111100 | |
| 1854.17 Salary | P1 EE PERA | | | -14719 | | -266262 | | | | 9200-AAAA | 200 | 1800 | |
| Last Check Date 12/30/2011 | PM CO PER-M | | | 27138 | | 479281 | | | | | | | |
| EMPLOYEE TOTAL | | | | 169266 / 185417 | | 3062094 / 3337268 | EMPLOYEE TOTAL | 139569 | 2534786 | EMPLOYEE TOTAL | 29697 | 527308 | |
| **LARA, LINDA** | 1 REGULAR | | | 177083 | | 708332 | C9 CHECKING NE | 134217 | 538246 | FEDERAL | 18954 | 75592 | .000 |
| 65 XXX-XX-XXXX CO CO CO | DP DEN125 | | | -638 | | -1276 | | | | MEDICARE | 2558 | 10252 | DIRDEP |
| 24 S1/S1 200 | P1 EE PERA | | | -14116 | | -55566 | | | | CO STATE | 6400 | 25600 | |
| 1770.83 Salary | PM CO PER-M | | | 26026 | | 104292 | | | | 9200-AAAA | 200 | 400 | |
| Last Check Date 12/30/2011 | | | | | | | | | | | | | |
| EMPLOYEE TOTAL | | | | 162329 / 177083 | | 650490 / 708332 | EMPLOYEE TOTAL | 134217 | 538246 | EMPLOYEE TOTAL | 28112 | 112244 | |
| **LONG, BRYAN M** | 1 REGULAR | | | 158333 | | 2850232 | HD HSA DIRECT | 13000 | 234000 | FEDERAL | 14572 | 263732 | .000 |
| 45 XXX-XX-XXXX CO CO CO | DP DEN125 | | | -638 | | -1276 | HR HSA DIRECT | -13000 | -234000 | MEDICARE | 2098 | 37917 | DIRDEP |
| 24 S1/S1 200 | HI HSA EE I | | | -13000 | | -234000 | C9 CHECKING NE | 111249 | 2000909 | CO STATE | 5000 | 101400 | |
| 1583.33 Salary | P1 EE PERA | | | -11576 | | -209198 | | | | 9200-AAAA | 200 | 1800 | |
| Last Check Date 12/30/2011 | PM CO PER-M | | | 21143 | | 376550 | | | | | | | |
| EMPLOYEE TOTAL | | | | 133119 / 158333 | | 2405758 / 2850232 | EMPLOYEE TOTAL | 111249 | 2000909 | EMPLOYEE TOTAL | 21870 | 404849 | |
| **MCCOY, REED R** | 1 REGULAR | | | 158333 | | 2850232 | HD HSA DIRECT | 10000 | 180000 | FEDERAL | 14986 | 271184 | .000 |
| 48 XXX-XX-XXXX CO CO CO | DP DEN125 | | | -638 | | -1276 | HR HSA DIRECT | -10000 | -180000 | MEDICARE | 2142 | 38700 | DIRDEP |
| 24 S1/S1 200 | HI HSA EE I | | | -10000 | | -180000 | C9 CHECKING NE | 113351 | 2040354 | CO STATE | 5200 | 103400 | |
| 1583.33 Salary | P1 EE PERA | | | -11816 | | -213518 | | | | 9200-AAAA | 200 | 1800 | |
| Last Check Date 12/30/2011 | PM CO PER-M | | | 21785 | | 384324 | | | | | | | |
| EMPLOYEE TOTAL | | | | 135879 | | 2455438 | EMPLOYEE TOTAL | 113351 | 2040354 | EMPLOYEE TOTAL | 22528 | 415084 | |

# PAYROLL REGISTER - MULTI STATE
## AXL ACADEMY - DS95

CHECK DATE 09/06/2011  WEEK 37
PERIOD BEGIN 08/21/2011  PERIOD END 09/05/2011

09/04/2012
PAGE 6

PAYCHEX OF NEW YORK LLC

| EMPLOYEE NAME / ID SSN STATE/FRQ STS LOCATION | EARNINGS DESCR | PAY RATE | HOURS | CURRENT AMOUNT | HOURS | YTD AMOUNT | DEDUCTIONS DESCR | CURRENT AMOUNT | YTD AMOUNT | TAXES DESCR | CURRENT AMOUNT | YTD AMOUNT | NET PAY / CHECK NO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **MIKULAK, ERIK P** 44 XXX-XX-XXXX CO CO CO · 24 M1/S1 200 · 1666.67 Salary · Last Check Date 12/30/2011 | | | | 158333 | | 2850232 | | | | | | | |
| | 1 REGULAR | | | 166667 | | 2999768 | C9 CHECKING NE | 132020 | 2366209 | FEDERAL | 12120 | 217699 | DIRDEP |
| | 1P MED125 | | | -638 | | -6048 | | | | MEDICARE | 2407 | 43283 | |
| | DD DEN125 | | | -7371 | | -7371 | | | | CO STATE | 6000 | 117300 | |
| | P1 EE PERA | | | -13282 | | -238803 | | | | 9200-AAAA | 200 | 1800 | |
| | PM CO PER-M | | | 24489 | | 429895 | | | | | | | |
| | VP VIS125 | | | -1255 | | -1255 | | | | | | | |
| EMPLOYEE TOTAL | | | | 152747 / 166667 | | 2746291 / 2999768 | | 132020 | 2366209 | | 20727 | 380082 | .00 |
| **MILLER, LEAH M** 15 XXX-XX-XXXX CO CO CO · 24 S0/S0 200 · 1770.83 Salary · Last Check Date 12/30/2011 | 1 REGULAR | | | 177083 | | 3187324 | C9 CHECKING NE | 130222 | 2348775 | FEDERAL | 22249 | 401490 | DIRDEP |
| | 1P MED125 | | | -638 | | -6048 | | | | MEDICARE | 2558 | 46115 | |
| | DD DEN125 | | | | | -1276 | | | | CO STATE | 7100 | 127800 | |
| | P1 EE PERA | | | -14116 | | -254428 | | | | 9200-AAAA | 200 | 1800 | |
| | PM CO PER-M | | | 26026 | | 457988 | | | | | | | |
| EMPLOYEE TOTAL | | | | 162329 / 177083 | | 2925980 / 3187324 | | 130222 | 2348775 | | 32107 | 577205 | .00 |
| **MILLIGAN, AUDREY M** 16 XXX-XX-XXXX CO CO CO · 24 M3/M3 200 · 1250.00 Salary · Last Check Date 12/30/2011 | 1 REGULAR | | | 108333 | | 1950232 | C9 CHECKING NE | 81642 | 1609966 | FEDERAL | 466 | 25035 | DIRDEP |
| | 1P MED125 | | | -15851 | | -69452 | | | | MEDICARE | 1321 | 26401 | |
| | DD DEN125 | | | -1138 | | -5160 | | | | CO STATE | 200 | 11900 | |
| | P1 EE PERA | | | -7290 | | -145670 | | | | 9200-AAAA | 200 | 1800 | |
| | PM CO PER-M | | | 13440 | | 261994 | | | | | | | |
| | VP VIS125 | | | -225 | | -8548 | | | | | | | |
| EMPLOYEE TOTAL | | | | 83829 / 108333 | | 1675102 / 1950232 | | 81642 | 1609966 | | 2187 | 65136 | .00 |
| **NELSON, CLARE M** 17 XXX-XX-XXXX CO CO CO · 24 S2/S2 200 · 2291.66 Salary · Last Check Date 12/30/2011 | 1 REGULAR | | | 229166 | | 3949764 | C9 CHECKING NE | 172312 | 2975268 | FEDERAL | 26520 | 438020 | DIRDEP |
| | 1P MED125 | | | -638 | | -6048 | | | | MEDICARE | 3314 | 57164 | |
| | DD DEN125 | | | -1276 | | -1276 | | | | CO STATE | 7900 | 154800 | |
| | P1 EE PERA | | | -18282 | | -315388 | | | | 9200-AAAA | 200 | 1800 | |
| | PM CO PER-M | | | 33708 | | 567886 | | | | | | | |
| EMPLOYEE TOTAL | | | | 210246 / 229166 | | 3627052 / 3949764 | | 172312 | 2975268 | | 37934 | 651784 | .00 |

PHONE (303)307-0505    FAX (303)307-8680

# PAYROLL REGISTER - MULTI STATE
## AXL ACADEMY - DS95

**CHECK DATE 09/06/2011   WEEK 37**
**PERIOD BEGIN 08/21/2011   PERIOD END 09/05/2011**

09/04/2012
PAGE   7

**PAYCHEX OF NEW YORK LLC**

PHONE (303)307-0505      FAX (303)307-8680

| EMPLOYEE NAME / ID SSN STATE/FRQ STS LOCATION | EARNINGS DESCR | PAY RATE | HOURS | CURRENT AMOUNT | HOURS | YTD AMOUNT | DEDUCTIONS DESCR | CURRENT AMOUNT | YTD AMOUNT | TAXES DESCR | CURRENT AMOUNT | YTD AMOUNT | NET PAY / CHECK NO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| O'DOWD, LAURA K | 1 REGULAR | | | 158333 | | 2850232 | C9 CHECKING NE | 117613 | 2122236 | FEDERAL | 18679 | 336818 | .000 |
| 18 XXX-XX-XXXX CO CO CO | 1E MED125 | | | -638 | | -6048 | | | | MEDICARE | 2287 | 41226 | DIRDEP |
| 24 90/90 200 | DP DEN125 | | | -1276 | | -1276 | | | | CO STATE | 6300 | 113400 | |
| 1583.33 Salary | P1 EE PERA | | | -12616 | | -227428 | | | | 9200-AAAA | 200 | 1800 | |
| Last Check Date 12/30/2011 | PM CO PER-M | | | 23260 | | 409383 | | | | | | | |
| EMPLOYEE TOTAL | | | | 145079 | | 2615480 | | 117613 | 2122236 | | 27466 | 4932244 | |
| | | | | 158333 | | 2850232 | | | | | | | |
| OSBORN, NATALIE | 1 REGULAR | | | 166667 | | 666668 | C9 CHECKING NE | 130125 | 520900 | FEDERAL | 15292 | 61168 | .000 |
| 62 XXX-XX-XXXX CO CO CO | P1 EE PERA | | | -13333 | | -53332 | | | | MEDICARE | 2417 | 9668 | DIRDEP |
| 24 S2/S2 200 | PM CO PER-M | | | 24583 | | 98332 | | | | CO STATE | 5300 | 21200 | |
| 1666.67 Salary | | | | | | | | | | 9200-AAAA | 200 | 400 | |
| Last Check Date 12/30/2011 | | | | | | | | | | | | | |
| EMPLOYEE TOTAL | | | | 153334 | | 613336 | | 130125 | 520900 | | 23209 | 92436 | |
| | | | | 166667 | | 666668 | | | | | | | |
| RECKMAN, BRENT W | 1 REGULAR | | | 177083 | | 3187732 | C9 CHECKING NE | 137230 | 2441642 | FEDERAL | 16641 | 297523 | .000 |
| 47 XXX-XX-XXXX CO CO CO | 1E MED125 | | | -638 | | -6048 | | | | MEDICARE | 2558 | 46115 | DIRDEP |
| 24 S2/S2 200 | DD DEN125 | | | -1276 | | -1276 | | | | CO STATE | 5700 | 121400 | |
| 1770.83 Salary | K1 401K-EE | | | -1750 | | -1750 | | | | 9200-AAAA | 200 | 1800 | |
| Last Check Date 12/30/2011 | P1 EE PERA | | | -14116 | | -254428 | | | | | | | |
| | PM CO PER-M | | | 26026 | | 457988 | | | | | | | |
| EMPLOYEE TOTAL | | | | 162329 | | 2908480 | | 137230 | 2441642 | | 25099 | 466838 | |
| | | | | 177083 | | 3187732 | | | | | | | |
| RIEHL, JOSPEH P | 1 REGULAR | | | 187500 | | 3375000 | C9 CHECKING NE | 147426 | 2706312 | FEDERAL | 15052 | 193801 | .000 |
| 42 XXX-XX-XXXX CO CO CO | DP DEN125 | | | -1276 | | -19504 | | | | MEDICARE | 2715 | 48588 | DIRDEP |
| 24 M1/S1 200 | P1 EE PERA | | | -14982 | | -268081 | | | | CO STATE | 6900 | 132500 | |
| 1875.00 Salary | PM CO PER-M | | | 27623 | | 482560 | | | | 9200-AAAA | 200 | 1800 | |
| Last Check Date 12/30/2011 | VP VIS125 | | | -225 | | -4414 | | | | | | | |
| EMPLOYEE TOTAL | | | | 172293 | | 3083001 | | 147426 | 2706312 | | 24867 | 376689 | |
| | | | | 187500 | | 3375000 | | | | | | | |
| RIERSON, JACOB L | 1 REGULAR | | | 145833 | | 583332 | C9 CHECKING NE | 121509 | 486436 | FEDERAL | 7042 | 28168 | .000 |
| 69 XXX-XX-XXXX CO CO CO | P1 EE PERA | | | -11667 | | -46668 | | | | MEDICARE | 2115 | 8460 | DIRDEP |
| 24 M2/M2 200 | PM CO PER-M | | | 21510 | | 86040 | | | | CO STATE | 3300 | 13200 | |
| 1458.33 Salary | | | | | | | | | | 9200-AAAA | 200 | 400 | |
| Last Check Date 12/30/2011 | | | | | | | | | | | | | |
| EMPLOYEE TOTAL | | | | 134166 | | 536664 | | 121509 | 486436 | | 12657 | 50228 | |
| | | | | 145833 | | 583332 | | | | | | | |

**PAYROLL REGISTER - MULTI STATE**
AXL ACADEMY - DS95

**PAYCHEX OF NEW YORK LLC**

CHECK DATE 09/06/2011  WEEK 37
PERIOD BEGIN 08/21/2011  PERIOD END 09/05/2011

09/04/2012
PAGE   8

PHONE  (303)307-0505          FAX  (303)307-8680

| EMPLOYEE NAME ID SSN STATE/FRQ STS LOCATION | EARNINGS DESCR | PAY RATE | HOURS | CURRENT AMOUNT | HOURS | YTD AMOUNT | DEDUCTIONS DESCR | CURRENT AMOUNT | YTD AMOUNT | TAXES DESCR | CURRENT AMOUNT | YTD AMOUNT | NET PAY CHECK NO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SCHLACKS, JULIE M** 23  XXX-XX-XXXX CO CO CO 24  S1/S1 200 1695.00 Salary Last Check Date 12/30/2011 | 1 REGULAR 1P MED125 DD DEN125 P1 EE PERA PM CO PER-M | | | 169500 -638 -13509 24907 | | 3051000 -6048 -243488 438294 | C9 CHECKING NE | 128698 | 2321549 | FEDERAL MEDICARE CO STATE 9200-AAAA | 17907 2448 6100 200 | 322908 44131 109800 1800 | DIRDEP 000 |
| EMPLOYEE TOTAL | | | | 153353 169500 | | 28001188 3051000 | | 128698 | 2321549 | | 26655 | 478639 | |
| **SEIFERT, ALLISON J** 39  XXX-XX-XXXX CO CO CO 24  S2/S2 200 1770.83 Salary Last Check Date 12/30/2011 | 1 REGULAR 1P MED125 DD DEN125 P1 EE PERA PM CO PER-M | | | 177083 -638 -638 -254428 26026 | | 3187732 -6048 -1276 -254428 457988 | C9 CHECKING NE | 137230 | 2455717 | FEDERAL MEDICARE CO STATE 9200-AAAA | 16641 2558 5700 200 | 300148 46115 122200 1800 | DIRDEP 000 |
| EMPLOYEE TOTAL | | | | 162329 177083 | | 2925980 3187732 | | 137230 | 2455717 | | 25099 | 470263 | |
| **WELCH, JESSICA** 64  XXX-XX-XXXX CO CO CO 24  S2/S2 200 1770.83 Salary Last Check Date 12/30/2011 | 1 REGULAR DD DEN125 P1 EE PERA PM CO PER-M | | | 177083 -638 -14116 26026 | | 708332 -1276 -56566 104292 | C9 CHECKING NE | 137230 | 550298 | FEDERAL MEDICARE CO STATE 9200-AAAA | 16641 2558 5700 200 | 66740 10252 22800 400 | DIRDEP 000 |
| EMPLOYEE TOTAL | | | | 163329 177083 | | 650490 708332 | | 137230 | 550298 | | 25099 | 100192 | |
| **YATES, JOHN D** 68  XXX-XX-XXXX CO CO CO 24  S1/S1 200 1583.33 Salary Last Check Date 12/30/2011 | 1 REGULAR DD DEN125 P1 EE PERA PM CO PER-M | | | 158333 -638 -12616 23260 | | 633332 -1276 -50566 93228 | C9 CHECKING NE | 120626 | 483884 | FEDERAL MEDICARE CO STATE 9200-AAAA | 16366 2287 5600 200 | 65640 9166 22400 400 | DIRDEP 000 |
| EMPLOYEE TOTAL | | | | 145079 158333 | | 581490 633332 | | 120626 | 483884 | | 24453 | 97606 | |

**PAYCHEX OF NEW YORK LLC**

## PAYROLL REGISTER - MULTI STATE
### AXL ACADEMY - DS95

CHECK DATE 09/06/2011  WEEK 37
PERIOD BEGIN 08/21/2011  PERIOD END 09/05/2011

09/04/2012
PAGE 9

| EMPLOYEE NAME / ID SSN STATE/FRQ STS LOCATION | EARNINGS DESCR | PAY RATE | HOURS | CURRENT AMOUNT | YTD HOURS | YTD AMOUNT | DEDUCTIONS DESCR | CURRENT AMOUNT | YTD AMOUNT | TAXES DESCR | CURRENT AMOUNT | YTD AMOUNT | NET PAY / CHECK NO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ZOBECK, KAAREM | 1 REGULAR | | | 158333 | | 2241232.2 | C9 CHECKING NE | 127122 | 1801986 | FEDERAL | 10970 | 121854 | 000 |
| 41 XXX-XX-XXXX CO CO CO | 1P MED125 | | | -638 | | -6048 | | | | MEDICARE | 2287 | 32109 | DIRDEP |
| 24 M1/M1 200 | DD DEN125 | | | -20780 | | -20780 | | | | CO STATE | 4500 | 79500 | |
| 1583.33 Salary | P1 EE PERA | | | -12616 | | -177155 | | | | 9200-AAAA | 200 | 1800 | |
| Last Check Date 12/30/2011 | PM CO PER-M | | | 23260 | | 319494 | | | | | | | |
| EMPLOYEE TOTAL | | | | 145079 | | 2037249 | | 127122 | 1801986 | | 17957 | 235263 | |
| | | | | 158333 | | 2241232 | | | | | | | |
| **TEACHERS** | 1 REGULAR | 1400 | | 5197745 | 22150 | 82684949 | C9 CHECKING NE | 4011045 | 63240455 | FEDERAL | 442833 | 7093615 | 000 |
| **DEPARTMENT TOTALS** | 1P MED125 | | | -47553 | | -1136653 | HD HSA DIRECT | 31333 | 532661 | MEDICARE | 73955 | 1170672 | |
| 31 EMPLOYEES    31 CHECKS | DD DEN125 | | | -17366 | | -213401 | HR HSA DIRECT | -31333 | -532661 | CO STATE | 158300 | 2781000 | |
| | H1 HSA EE I | | | -31333 | | -563994 | | | | 9200-AAAA | 6200 | 50000 | |
| | K1 401K-EE | | | -17500 | | -17500 | | | | ER MEDCR | 73955 | 1109-5287 | |
| | P1 EE PERA | | | -408035 | | -6382945 | | | | CO ER SUI | 5305 | 101367 | |
| | PM CO PER-M | | | 752306 | | 11454566 | | | | | 681288 | 1170674 | |
| | VP VISI25 | | | -11125 | | -34914 | | | | | 79260 | 1272641 | |
| DEPARTMENT TOTAL | | 1400 | 22150 | 4692333 | | 74335742 | | 4011045 | 63240455 | | 760548 | 12367928 | 000 |
| | | | | 5197745 | | 82684949 | | | | | | | |
| **AXL ACADEMY** | 1 REGULAR | 1400 | | 6355683 | 86183 | 105124233 | C9 CHECKING NE | 4905535 | 80859580 | FEDERAL | 554904 | 9089272 | |
| **COMPANY TOTALS** | 1P MED125 | | | -47553 | | -1170581 | HD HSA DIRECT | 31333 | 532661 | MEDICARE | 90706 | 1497048 | |
| 36 EMPLOYEES    36 CHECKS | DD DEN125 | | | -20074 | | -260369 | HR HSA DIRECT | -31333 | -532661 | CO STATE | 196800 | 3534800 | |
| | H1 HSA EE I | | | -31333 | | -563994 | | | | 9200-AAAA | 7200 | 62600 | |
| | K1 401K-EE | | | -500453 | | -8183575 | | | | ER MEDCR | 849610 | 14183720 | |
| | P1 EE PERA | | | | | -17500 | | | | CO ER SUI | 90706 | 1497042 | |
| | PM CO PER-M | | | 922702 | | 14693618 | | | | ER MEDCR | 5305 | 124041 | |
| | RD REGULAR | | | 1000 | | 150000 | | | | CO ER SUI | 96011 | 1621083 | |
| | VP VISI25 | | | -11125 | | -34914 | | | | | | | |
| COMPANY TOTAL | | 1400 | 87183 | 5755145 | | 95043300 | | 4905535 | 80859580 | | 945621 | 15804803 | 000 |
| | | | | 6355683 | | 105274233 | | | | | | | |

PHONE (303)307-0505    FAX (303)307-8680